In re OLYMPIA HOLDING CORPORATION, a/k/a P*I*E Nationwide, Inc., et al., Debtors.

Nos. 90–4195–3P7, 90–4223–3P7.

United States Bankruptcy Court,
M.D. Florida,
Jacksonville Division.

Jan. 26, 2004.

James H. Post, Smith, Hulsey & Busey, Jacksonville, FL, for debtor.

John B. Macdonald, Akerman, Senterfitt, PA, Jacksonville, FL, for trustee.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

GEORGE L. PROCTOR, Bankruptcy Judge.

This case is before the Court upon the Motion to Compel Lloyd Whitaker, Chapter 7 Trustee of P*I*E Nationwide, Inc., Foley & Lardner, Gregory Anderson, Esquire, the Law Offices of Gregory Anderson, P.A., Anderson, St. Denis & Glen, P.A., and Charles Howell, Esquire, to Disgorge All Fees Received in Connection with Chapter 7 Proceedings and Motion to Remove Whitaker, Foley, Tomm and Anderson as Representatives of the Estate (Motion), filed by Leonard Pelullo, Lyn Merritt, Peter D. Pelullo Trust, The Ariana G. Pelullo Trust, Peter F. Pelullo, Olympia Holding Corporation, OHA Incorporated and One Plaza Corporation (collectively, Pelullo Plaintiffs). After hearings on March 6, May 1 and 2, July 10 and 11, August 7 and 8, and September 11, 2003, the Court makes the following Findings of Fact and Conclusions of Law: [1]

### FINDINGS OF FACT

1. Debtor, Olympia Holding Corporation, formerly P*I*E Nationwide, Inc. (P*I*E) was a large motor carrier with approximately 4,500 employees and annual revenues of approximately $500 million.

2. In April 1990, Leonard Pelullo and his affiliates acquired control of P*I*E. Mr. Pelullo and his affiliates also controlled One Plaza Corporation (One Plaza) and OHA, Incorporated. (OHA).

---

1. The Pelullo Plaintiffs submitted memoranda that contains numerous inaccurate cites to the transcript of the hearings on the Motion.

3. This Court previously found that P*I*E's payment of $6,508,358 to OHA during October 1990 constituted an avoidable transfer under Section 547 of the Bankruptcy Code.

4. P*I*E filed for bankruptcy on October 16, 1990. The Debtor's Statement of Financial Affairs, filed under oath in this case, did not list OHA, One Plaza and other Pelullo affiliates as insiders and did not list the payment of more than $20 million to them during the year prior to bankruptcy as payments to insiders.

5. Lloyd Whitaker was appointed as Chapter 11 Trustee for P*I*E and was subsequently appointed as its Chapter 7 Trustee. Shortly after his initial appointment, Mr. Whitaker appointed Charles Tomm, P*I*E's general counsel, as P*I*E's new Chief Operating Officer. Under the Trustee's supervision, Mr. Tomm directed the shutdown of P*I*E.

6. The Trustee had an accounting firm prepare P*I*E's 1990 federal income tax return. The return deducted P*I*E's questioned payments to OHA and One Plaza as ordinary business expenses.

7. The Trustee hired Foley & Lardner (Foley), with this Court's approval, as the Trustee's counsel.

8. The Trustee, with the assistance of his staff and professionals, conducted an investigation of P*I*E, including its relationship with the Pelullo entities and the undisclosed payments P*I*E made to OHA, One Plaza and other Pelullo affiliates. After consultation with Foley, the Trustee determined that there were various potential recovery actions which should be pursued against Mr. Pelullo as well as certain former officers and directors of P*I*E and several law firms that P*I*E had retained in the past.

9. Federal law enforcement officials, including the FBI, were investigating Mr.

Pelullo and P*I*E prior to the appointment of the Trustee. The Trustee, his staff, and his attorneys cooperated with the FBI and other federal law enforcement agencies.

10. Mr. Pelullo was indicted by a Federal Grand Jury in Jacksonville for bankruptcy crimes. The United States Attorney in Jacksonville decided not to pursue the case after Mr. Pelullo was indicted by a Philadelphia Grand Jury on RICO and wire fraud charges and a Newark Grand Jury on employee pension plan embezzlement and money laundering charges.

11. Foley, on behalf of the Trustee, pursued fraudulent transfer and preference actions against Pelullo affiliates OHA and One Plaza, a lawsuit against former directors and officers of P*I*E, including Mr. Pelullo, a legal malpractice claim against one of P*I*E's former law firms, and a claim under P*I*E's $500,000 crime and fidelity bond insurance policy (collectively, Foley Lawsuits).

12. The Trustee hired Gregory Anderson and the Law Offices of Gregory Anderson, P.A. (collectively, Anderson), with this court's approval, as the Trustee's special counsel to pursue several other actions, including five legal malpractice cases (Anderson Lawsuits) on a contingency fee basis. The Trustee eventually recovered more than $20 million through the successful settlement of these lawsuits.

13. In 1994, Mr. Tomm left the full-time employ of P*I*E to accept an executive position with another company. The Trustee believed that Mr. Tomm's extensive knowledge of the factual background of P*I*E, which he gathered as a result of assisting the Trustee with his investigation, would be valuable in connection with the continued prosecutions of the pending lawsuits, as well as the liquidation of the final assets and closing of the Estate. Mr.

Tomm and the Trustee entered into an agreement where Mr. Tomm would be paid for part-time work on a one-day-a-week arrangement. Mr. Tomm also agreed to help with the Anderson Lawsuits.

14. In the spring of 1996, Mr. Tomm complained to Mr. Anderson that he had worked substantially more than originally contemplated by the employment arrangement. Mr. Tomm asked Mr. Anderson to pay him fair compensation for his substantial work assisting with the Anderson Lawsuits. Mr. Anderson refused and advised the Trustee of Mr. Tomm's request.

15. The Pelullo Plaintiffs introduced evidence that Mr. Tomm provided substantial assistance to Anderson including the drafting of pleadings. P Ex. 1, p. 3.[2]

16. The Trustee scheduled a meeting with Mr. Anderson and Mr. Tomm for May 23, 1996 to discuss the compensation issue. Mr. Tomm wrote a background memorandum dated May 22, 1996 to explain his position prior to the meeting. The memorandum alleged that Mr. Tomm had discussed the compensation issue with Mr. Anderson and that Mr. Tomm had been promised substantial compensation but the conversations had failed to produce any resolution. The memo states that Mr. Tomm ... "deserve[d] to be compensated," Vol. III p. 467, and that he was operating based on the "assumption" he would be compensated properly. Vol. III p. 477. Prior to the meeting, Foley advised the Trustee in writing regarding the need for court approval if any additional compensation were paid to Mr. Tomm and the Bankruptcy Code prohibition against fee sharing.

17. At the May 23, 1996 meeting, which was attended by the Trustee, Mr. Anderson, Mr. Tomm and attorneys from Foley, Mr. Tomm's request for additional compensation was discussed. However, Mr. Anderson and the Trustee both refused to pay additional compensation to Mr. Tomm. Mr. Tomm testified that he believed he and Mr. Anderson reached an agreement at the meeting to mediate the compensation dispute.

18. Following the meeting, Mr. Tomm presented several proposals to Mr. Anderson. Mr. Anderson sought an ethics opinion from the Florida Bar regarding the compensation issue. Upon receipt of the opinion, which arguably stated that it was inappropriate for Mr. Anderson to compensate Mr. Tomm,[3] Mr. Tomm engaged his own lawyer, Charles Cook Howell, III, to represent him in his claim for additional compensation.

19. In the summer of 1997, the Trustee favorably settled the last Anderson Lawsuit. At that point, Mr. Tomm reasserted his claim against Mr. Anderson to be paid fairly for his work assisting with the Anderson Lawsuits.

20. The Trustee met with the Assistant United States Trustee with supervisory responsibility for the P*I*E case, to brief him about the Tomm–Anderson dispute. Vol. V p. 869–872.

21. Foley, on behalf of the Trustee, wrote a letter to Mr. Anderson and his attorney dated July 29, 1997, stating that the Trustee did not wish to take sides in the dispute between Mr. Anderson and Mr. Tomm. The letter also suggested that

---

**2.** "P Ex." Refers to the exhibits submitted by the Pelullo Plaintiffs, and "Vol." followed by a Roman Numeral refers to the transcript volumes of the hearings on the Motion.

**3.** Mr. Tomm disputes Mr. Anderson's characterization of his duties in the letter requesting the opinion. In his letter to the Bar, Mr. Anderson referred to Mr. Tomm as an expert witness.

Anderson should disclose the existence of Mr. Tomm's claims to the Court in connection with its fee application.

22. At the August 20, 1997 hearing on Anderson's fee application, Mr. Anderson testified about Mr. Tomm's claim for compensation. P Ex. 7, p. 45. During the hearing Anderson testified that Mr. Tomm "did not participate as counsel." P Ex. 7, pp. 39–45.

23. Mr. Davis advised the court Mr. Tomm may file a claim against the estate. P.Ex. 7, p. 47.

24. Mr. Tomm, represented by Mr. Howell, subsequently filed suit against Anderson in state court seeking fair payment for his work, including a count for quantum meruit. Mr. Anderson removed the case to this Court and moved for summary judgment. This Court's Findings of Fact and Conclusions of Law, dated November 24, 1997, state, "[I]t is clear that this proceeding involves a private matter between the parties and does not involve the Debtor or the bankruptcy estate." *Tomm v. Anderson, et al,* 215 B.R. 254 (Bankr.M.D.Fla.1997). This Court remanded the case to state court.

25. After Mr. Anderson received a second Florida Bar ethics opinion that a settlement would be permissible, he reached a settlement with Mr. Tomm without admitting liability. Pursuant to that settlement, Mr. Anderson paid Mr. Tomm approximately $300,000 plus attorney fees. Vol. VIII, p. 1285.

### CONCLUSIONS OF LAW

█ The Pelullo Plaintiffs move the Court to order: (1) disgorgement by the Trustee, Foley and Anderson of fees they received from the P*I*E estate, (2) disgorgement by Mr. Howell of fees he received from representation of Mr. Tomm, and (3) the removal of Mr. Whitaker as Trustee and Foley as his counsel in this Chapter 7 case. The Pelullo Plaintiffs support this request by alleging the following: [4]

1. The Trustee, Foley and Anderson committed bankruptcy fraud under 18 U.S.C. 152(3) and perjured themselves under 18 U.S.C. 1623 during hearings before this and other courts.

2. The Trustee and Foley lied to the FBI and other government agencies by falsely accusing Mr. Pelullo of stealing $23 million of P*I*E assets.

3. Foley was inappropriately paid on an hourly basis for assisting the Trustee with the Anderson Lawsuits.

4. The Trustee improperly sought to recover moneys from OHA, One Plaza, and the P*I*E directors because the 1990 P*I*E income tax return deducted the payments to OHA and One Plaza as business expenses.

5. The Trustee, Foley, and Anderson violated 11 U.S.C. 327 when the Trustee employed Mr. Tomm as a professional in the Anderson Lawsuits without first obtaining this Court's consent, breached 11 U.S.C. 504 and Rule 2016, Federal Rules of Bankruptcy Procedure, by filing applications to employ Anderson as counsel in the Malpractice Actions, and subsequently submitting Anderson's fee applications which fail to disclose Mr. Tomm's alleged role as counsel, as well as concealing Anderson's alleged agreement to compensate Mr. Tomm for his services as both counsel and a material fact witness.

---

4. Evidently, the Pelullo Plaintiffs have dropped some of these allegations because they are not discussed in their post trial submissions. However, because these allegations were contained in the Motion, this Court will briefly discuss them.

■ Concerning removal, the Bankruptcy Code vests this Court with authority to remove a trustee for cause. Courts typically remove a trustee only upon a showing of actual injury to the estate or fraud. "In general, a party seeking the removal of a trustee must prove that there has been some actual injury or fraud .... trustee should not be removed for mistakes in judgment where that judgment was discretionary and reasonable under the circumstances, ... and courts should consider the best interests of the estate, rather than those of a single movant-creditor, when determining whether to remove a trustee." *In re Lundborg,* 110 B.R. 106, 108 (Bankr.D.Conn.1990) (internal citations omitted). The remedy of removal is considered extreme. *In re Sheehan,* 185 B.R. 819, 822 (Bankr.D.Ariz.1995).

■ The Bankruptcy Code also vests this Court with authority to order disgorgement of fees collected or to impose sanctions where a party is found to have committed fraud on the court. *In re R & R Associates of Hampton,* 248 B.R. 1, 6 (Bankr.D.N.H.2000). This power is within the sound discretion of the court. *In re Wilde Horse Enterprises, Inc.,* 136 B.R. 830, 845 (Bankr.C.D.Cal.1991). None of the Pelullo Plaintiffs' requested sanctions will be imposed in this case.

Witnesses testified unequivocally that the Trustee, his professionals and his agents never testified falsely in any proceeding before this or any other court with respect to the P*I*E estate, nor were requested to commit perjury at any time. The Pelullo Plaintiffs presented no evidence whatsoever of perjury or subornation of perjury.

Regarding the criminal investigation of Mr. Pelullo, the Pelullo Plaintiffs' evidence fails.

The Trustee is under a statutory duty under 18 U.S.C. 3057(a) to report to the appropriate United States Attorney when the Trustee has reasonable grounds for believing a bankruptcy crime has been committed. Evidence before this Court demonstrates that the Trustee was approached by the FBI and the Interstate Commerce Commission; the agencies were inquiring into the conduct of Mr. Pelullo and the circumstances of the P*I*E bankruptcy filing. The Trustee and his agents, primarily through Mr. Tomm, provided information developed in the administration of the P*I*E Estate in response to these inquiries. The Trustee's investigation revealed that approximately $23,000,000.00 in assets were disbursed by P*I*E close to the Petition Date for the benefit of Mr. Pelullo and Pelullo-controlled entities. The P*I*E Bankruptcy Schedules and Statement of Financial Affairs, prepared during Mr. Pelullo's administration of the Company, failed to disclose any such transfers or the insider status of OHA and One Plaza. There is simply no evidence of any false or misleading information provided by the Trustee or his agents to any law enforcement agency.

The Pelullo Plaintiffs also complain that, notwithstanding Foley having declined to handle the legal malpractice actions on a contingency basis, Foley nonetheless included hourly charges within its periodic compensation applications for the malpractice actions. Foley's periodic fee applications include numerous entries with respect to the analysis of the merits of the malpractice actions, strategy for realization of those assets, and ultimately participation in proceedings for this Court's approval of the settlements. These services are distinct from Anderson's representation of the Trustee in prosecution of those actions. Each of Foley's fee applications was approved by this Court upon notice and a hearing. No objection whatsoever has been lodged to Foley's fee applications prior to the instant motion.

Regarding the tax return issue, although the 1990 P*I*E corporate tax return reflects that payments to OHA and One Plaza were deducted as ordinary business expenses, such characterization does not bar the Trustee from pursuing claims arising from those transfers. Evidently, the decision on the income tax deductibility for these items was made upon the advice of tax accountants before the Trustee completed his investigation of P*I*E's relationship with Mr. Pelullo. Moreover, the monetary recoveries related to the preferential transfer actions were reflected as income on subsequent P*I*E tax returns. There is no evidence whatsoever that the Trustee and Foley committed any fraudulent act or violated any discovery rules regarding the tax return in question.

The main allegations of bankruptcy fraud and perjury involve the fee applications submitted by Anderson and the alleged secret compensation agreement between Mr. Anderson and Mr. Tomm. The Pelullo Plaintiffs failed to prove such an arrangement existed.

The Pelullo Plaintiffs allege there was a secret fee sharing agreement between Mr. Anderson and Mr. Tomm and an alleged conspiracy among Mr. Anderson, Mr. Tomm, the Trustee, Foley, and Mr. Howell to conceal the fee sharing agreement from this Court. While it may be true the Mr. Tomm could not function openly as lead attorney or be compensated on a contingency fee basis because he was a fact witness, even Mr. Tomm does not allege he was either lead counsel or was promised a contingency fee.

The Pelullo Plaintiffs have provided evidence that Mr. Tomm spent a substantial amount of time on the Anderson Lawsuits and it is clear to this Court that Mr. Tomm provided great assistance to Mr. Anderson. It is also clear that Mr. Tomm helped with the cases with the expectation he would receive some kind of financial reward. It is possible that Mr. Tomm was underpaid for his efforts.[5] Regardless, the amount of Mr. Tomm's compensation is not before the Court. The only relevant question is whether there is sufficient evidence of an illegal fee sharing agreement.

Mr. Howell admits there was not any enforceable compensation agreement, much less a fee sharing agreement. Vol. VII p. 1133. He testified that in the state court action he was seeking not a share of Anderson's legal fees but quantum meruit or unjust enrichment. Vol. 1132–33. This Court holds that *no* specific compensation agreement existed, much less an illegal fee sharing agreement.

Regarding the Trustee and his professionals and the disclosure issue, the fee controversy was disclosed to the United States Trustee's office and to this Court. The fact that Mr. Tomm sued Mr. Anderson is a matter of public record and the Court was made aware of the suit when Mr. Anderson removed it to this Court. This Court held it was a private matter and remanded it.

This massive case has been before this Court for more than a decade. Surely, the Trustee and his professionals have made countless judgment calls. Assuming without deciding that the Trustee and/or his professionals made errors in their dealings with Mr. Tomm and this Court, the alleged behavior does not rise to the level that even a minor sanction is warranted. This Court does not hesitate to hold that the

---

**5.** Anderson received legal fees of almost six million dollars. Of course Anderson, as the attorney of record, funded the prosecution of the cases and assumed the risk there would be little or no financial recovery. Mr. Tomm did not provide significant assistance with the court hearings, depositions, etc.

Pelullo Plaintiffs have utterly failed to prove to this Court that it should impose any sanction on the Trustee, his professionals or Mr. Howell.

A separate order denying the Pelullo Plaintiff's Motion will be entered.

**ORDER DENYING MOTION TO COMPEL LLOYD WHITAKER, CHAPTER 7 TRUSTEE OF P\*I\*E NATIONWIDE, INC., FOLEY & LARDNER, GREGORY ANDERSON, ESQUIRE, THE LAW OFFICES OF GREGORY ANDERSON, P.A., ANDERSON, ST. DENIS & GLEN P.A. AND CHARLES HOWELL, ESQUIRE TO DISGORGE ALL FEES RECEIVED IN CONNECTION WITH CHAPTER 7 PROCEEDINGS AND MOTION TO REMOVE WHITAKER, FOLEY, TOMM AND ANDERSON AS REPRESENTATIVES OF THE ESTATE**

This case is before the Court upon the Motion to Compel Lloyd Whitaker, Chapter 7 Trustee of P\*I\*E Nationwide, Inc., Foley & Lardner, Gregory Anderson, Esquire, the Law Offices of Gregory Anderson, P.A., Anderson, St. Denis & Glen, P.A., and Charles Howell, Esquire, to Disgorge All Fees Received in Connection with Chapter 7 Proceedings and Motion to Remove Whitaker, Foley, Tomm and Anderson as Representatives of the Estate (Motion), filed by Leonard Pelullo, Lyn Merritt, Peter D. Pelullo Trust, The Ariana G. Pelullo Trust, Peter F. Pelullo, Olympia Holding Corporation, OHA Incorporated and One Plaza Corporation. It is ORDERED.

The Motion is DENIED.