# APPENDIX A

Page 1

*OPINION*

In re AFI Holding, Inc.
9th Cir.BAP (Cal.),2006.

United States Bankruptcy Appellate Panel of the Ninth
Circuit.
In re AFI HOLDING, INC., Debtor.
Carolyn A. Dye, Chapter 7 Trustee, Appellant,
v.
J. Gregory Brown; Cecilia A. Brown, et al., Appellees.
**BAP No. CC-05-1247-MaPaK.**
**Bankruptcy No. LA 01-41567-VZ.**

Argued and Submitted March 23, 2006.
Filed Oct. 25, 2006.

*142James A. Dumas, Jr., Dumas & Associates, Deborah
H. Eisen, Weinstein, Eisen & Weiss LLP., Los Angeles,
CA, for Appellant.
Richard L. Weiner, Weiner & Laurin, LLP, Encino, CA,
for Appellees.
Michael Jay Berger, Law Offices of Michael J. Berger,
Beverly Hills, CA, for AFI Holding, Inc.

Before: MARLAR, PAPPAS and KLEIN, Bankruptcy
Judges.

MARLAR, Bankruptcy Judge.

*INTRODUCTION*

The chapter 7 [FN1] trustee has appealed the bankruptcy
court's order of removal, which found that she was not
disinterested due to a material conflict of interest. She
contends that the bankruptcy court applied an incorrect
legal standard under § 324, and challenges the court's
findings.

> FN1. Unless otherwise indicated, all code,
> section, and chapter references are to the
> Bankruptcy Code, 11 U.S.C. §§ 101-1330 prior
> to its amendment by the Bankruptcy Abuse
> Prevention and Consumer Protection Act of
> 2005, Pub.L. 109-8, 119 Stat. 23 (2005). "Rule"
> references are to the Federal Rules of
> Bankruptcy Procedure ("Fed. R. Bankr.P."),
> Rules 1001-9036.

We hold that the bankruptcy court properly applied a
totality-of-circumstances test in making its determination
that the trustee's prior connections with insiders negatively
impacted the administration of the estate. Since
disinterestedness is a requirement for service as an
appointed trustee, see§§ 321(a)(1) and 701(a)(1), the
court's determination that lack of such disinterestedness
was a "cause" for her removal was a proper exercise of its
broad discretion under § 324. In addition, the evidence of
an "appearance of impropriety," as well as the trustee's
failure to disclose all of her connections, were factors
contributing to a lack of creditor confidence and, thus,
supported the bankruptcy court's conclusion that cause for
removal existed under § 324. Therefore, we AFFIRM.

## FACTS

This case was commenced on October 21, 2001, by the simultaneous filing of six chapter 11 bankruptcy petitions. Advance Finance, Inc. and AFI Holding, Inc. were the general partners (together "AFI") of four limited partnerships (together "AFI Entities"). The bankruptcy cases were consolidated, with AFI Holding as the consolidated debtor.

Richard Cohen ("Cohen") was AFI's president from 1994 to 1996. In July of 1996, Gary A. Eisenberg ("Eisenberg") *143 was chairman of AFI and formed AFI Holding. The AFI Entities had been involved in a "Ponzi" scheme, specifically a "factoring" business whereby they would make loans to clients (borrowers) using the clients' accounts receivable as collateral. Then, instead of paying the investors with the profits, they paid the old investors purported interest payments using the new investors' money. Cohen left AFI in 1996, was criminally prosecuted, and went to prison. After filing the chapter 11 petitions, Eisenberg relinquished control of the AFI Entities and was convicted of securities violations.

The bankruptcy court ordered that a chapter 11 trustee be appointed for each case, and the U.S. Trustee selected Carolyn A. Dye ("Dye"). Since 1998, Dye had been "Of Counsel" to Weinstein, Eisen & Weiss, P.C. Some of Dye's prepetition services are pertinent to this appeal, including her representation of and acquaintance with James Meister ("Meister") and Allan Eriksen ("Eriksen").

### Dye's Representation of Meister

In 1995, while Meister was employed as the controller of AFI, he hired Dye to represent him in a personal bankruptcy case. After that, Meister and Dye occasionally saw each other at social events but were not "close friends." Dep. of Dye 89, Feb. 11, 2005.

When Eisenberg formed AFI Holding, Meister was named its chief financial officer, secretary, and director, but he was never an investor, creditor or equity shareholder in any AFI Entity. During Meister's employment with AFI, his domestic partner, Eriksen, invested money in an AFI entity.

Between 1996 and 1997, Meister became aware of fraudulent activities by Cohen and the complicity of Eisenberg. Specifically, he realized that his financial statements were inaccurate because they were based on forged documents, that money was being embezzled by Cohen, that Cohen was directing him to prepare false reports under threat of loss of his job, and that Eisenberg was requiring him to participate in new investment activities-"new money to pay repay the old money." Dep. of Meister 56, Feb. 24, 2005.

Eisenberg, on the other hand, believed that Meister was intentionally engaged in corporate misconduct. See Dep. of Eisenberg 24, Feb. 15, 2005. In a 1998 state court action against it, AFI filed a cross-complaint against Meister, which was subsequently dismissed. See Decl. of Loeb ¶ 3-4, Apr. 14, 2005.

Meister testified that his next communication with Dye, following his bankruptcy case, was in 1997 when he sought her advice concerning his decision to resign from AFI. However, he rescinded that testimony in a declaration dated April 13, 2005, in which he averred that his discussion with Dye had actually taken place in 1999, and concerned a termination notice which he had received from his subsequent employer, Tri-Capital Finance Corp. ("Tri-Capital").[FN2] Meister resigned from AFI in June, 1997, but remained in a consulting role for another month.

> FN2. This change was interesting in that Meister's deposition contained two and one-half

pages of testimony concerning his alleged 1997 contact with Dye, and the new declaration was filed along with Dye's declaration in opposition to the motion to remove her as trustee, in which she denied having advised Meister concerning his termination from AFI. *See* Decl. of Dye 27, ¶ 8, Apr. 13, 2005.

In mid-1998, Meister referred Eriksen to Dye to represent him in seeking a withdrawal of his investment monies from AFI. Both Meister and Dye testified that they *144 did not speak to each other about either Ericksen's legal matters or AFI.

Then, in September, 1999, Meister sought Dye's legal advice regarding the Tri-Capital termination notice. Dye testified that she "looked [the notice] over only briefly, found it unremarkable, and had no other involvement with Meister." Decl. of Dye 27, ¶ 9, Apr. 13, 2005.

### Dye's Representation of Eriksen

As a result of his investment, Eriksen was a limited partner in an AFI entity. Eriksen was privy to the misconduct at AFI because Meister had told him about it. *See* Dep. of Meister 63, Feb. 24, 2005. (Eriksen's deposition testimony was stricken by the bankruptcy court as untimely, and that ruling has not been challenged in this appeal.)

In June, 1998, Eriksen hired Dye to assist him in his efforts to withdraw his investment monies. Eisenberg allegedly had told Eriksen that AFI needed to obtain new investor money in order to pay him. *See* Dep. of Meister 57-60. Eisenberg also testified that he told Dye that Meister's alleged misconduct was a reason not to pay Eriksen. Dep. of Eisenberg 40-41.

However, when Dye was questioned as to whether Eisenberg had ever implicated Meister to her in regards to operational misconduct, she stated that "he never mentioned Mr. Meister as being involved." Dep. of Dye 94. And, when Dye was asked whether Eriksen had said anything to her "indicating that he thought there was financial misconduct" at AFI, Dye gave a cautious response:

Mr. Eriksen was a limited partner. He had no knowledge of what was going on in the office, particularly as it related to Mr. Eisenberg's dealings with limited partners.

*Id.*

Dye then negotiated a deal with Eisenberg to convert Eriksen's equity to debt, [FN2] and Eriksen was given a promissory note, dated August 31, 1998, for $52,327.29 payable from AFI. This amount was compromised and satisfied in May 1999, at which time a "Release Agreement" was purportedly signed. (Dye provided a copy of an unsigned, undated "release agreement" but the signed document was never produced.) However, a letter from Dye to Eisenberg, dated May 18, 1999, was admitted into evidence, in which she stated:

> FN3. Nonetheless, in the subsequent compromise negotiations, Dye insisted that Eriksen had a partner's right to inspect the partnership's tax return. *See* Letter from Dye to Eisenberg, May 4, 1999, Exh. 5 to Reply to Trustee's Opposition to Motion for Removal.

Mr. Eriksen will accept your settlement figure. However, he has asked that you issue two checks, one to his IRA Trustee for $12,697.66 and the second to my law firm for $1,250.

Dye has not disputed the fact that those monies were paid,

as indicated. *See also* Dye's Dep. Tr. Corr. [to p. 121], Feb. 28, 2005 (stating that the lump-sum payoff was performed).

### *Dye's Declaration of Disinterestedness in Chapter 11*

In connection with her unopposed appointment as trustee in the consolidated chapter 11 case, Dye filed her "Declaration of Disinterestedness." She stated:

4. There is one other matter which I must disclose, not because I believe it presents a conflict, but for informational purposes.

5. In mid-June, 1998, I was engaged to represent an individual who had made an investment in an entity called Advance Finance Partnership. In that capacity I negotiated a settlement for my client for the withdrawal*145 of his capital contribution. (The settlement reached resulted in a compromised payment and mutual releases.) That matter has been concluded since mid-1999 and I do not have any continuing client relationship with the individual I represented.

6. I was in an adverse relationship with the Debtor entities and did not learn anything as a result of my own client relationship which would place me in a present conflict. I do not believe this would present any issue in my appointment in this case.

Decl. of Disinterestedness of Dye 2-3, Nov. 14, 2001.

Dye's declaration did not mention her representation of Meister, identify Eriksen, or explain the connection between Meister and Eriksen.

### *The Chapter 7 Case and Dye's Supplemental Declaration*

The consolidated chapter 11 case was converted to chapter 7 on July 29, 2002, and Dye was appointed its trustee without objection.

In July, 2003, Dye initiated litigation to recover about $10 million from more than 150 potential defendants, including investors and parties-in-interest who had received payments under the Ponzi scheme, in an effort to liquidate Debtor's equity. Dye did not sue Eriksen, based on her decision that his claim against the estate had been settled and released and that he was judgment-proof. Nor did she sue Meister for any alleged wrongdoing, indicating that any claims of AFI against him were time-barred and had expired prepetition.

Discovery proceeded in the adversary actions, including the taking of depositions of Eisenberg, Meister, Eriksen, and Dye. Being aware of Meister's testimony, Dye filed a "Supplement to Declaration of Disinterestedness," on March 14, 2005, in which she belatedly disclosed her relationship with Meister and his relationship to both Eriksen and AFI. She stated that her failure to disclose these facts sooner was due to inadvertence.

At the same time, AFI investors, including the appellees herein ("Appellees"), filed a motion to remove Dye as trustee, pursuant to § 324. They alleged, among other things, that she was not disinterested, had failed to disclose material facts revealing a conflict of interest, and had injured the estate by failing to bring adversary proceedings against either Meister or Eriksen. [FN4]

> FN4. Appellees also alleged that Dye had blocked and frustrated discovery. However, the bankruptcy court found no improprieties, and Appellees have not filed a cross-appeal.

Therefore, we will not address the issue.

Dye and the U.S. Trustee opposed the motion. Dye maintained that Appellees failed to show that she was not disinterested because: (1) "disinterestedness" is defined as having an adverse interest, not as "representing" an adverse interest; and (2) her representation of Meister and Eriksen was not materially adverse to the estate or a class of creditors.

The U.S. Trustee maintained that there was insufficient evidence to support removal in light of a trustee's discretion to make business judgments. He further stated that Dye's inadvertent failure to disclose her representation of Meister was not cause for removal.

Appellees replied with accusations that Dye's nondisclosure was intentional, and that she gave false and misleading testimony regarding the extent of her relationship with Meister and Eriksen, as well as failing to produce Ericksen's release agreement.*146 Moreover, Appellees argued that Dye's letter instruction to Eisenberg to pay her $1,250 in attorney's fees made her a direct transferee of payments from AFI, in 1999.

### The Bankruptcy Court's Ruling

On May 3, 2005, the bankruptcy court heard argument on the motion for removal of Dye. Considering the standard for removal under § 324, the court held that lack of disinterestedness, standing alone, sufficed as "cause" for removal.

It then looked at all of the events and circumstances to determine that Dye was not disinterested. It found that Meister was an insider of the AFI Entities at the time Dye represented him; that Dye then represented Ericksen, who was referred to her by Meister and who was an investor in the AFI Entities. It found that Dye had reached a settlement for Ericksen with AFI which included payment of her attorney's fees, and such payment "could possibly be materially adverse to the interest of the bankruptcy estate." It found and concluded that

Carolyn Dye indeed had an interest that was materially adverse to the interest of the estate. Why? Because when you know when you have represented someone who had claims against that entity and you represented, albeit in an unrelated context, an individual who was an insider of that entity and that insider referred an investor to you to represent [its] claims against that entity, you are representing an interest-you represent an interest which was adverse to this estate.

Tr. of Proceeding 72:10-18, May 5, 2005.

The court described this adverse interest in terms of a potential [FN5] conflict of interest, when it ruled:

> FN5. There is a trend to make no distinction between potential and actual conflicts. *See generally* 1 *Norton Bankr. L. & Prac.2d* § 25:5 (2006). That topic is beyond the scope of our decision.

Whether or not, ultimately we'll never know, the estate would have had any claims against Meister and against Eriksen or-in the form of a claim to undue [sic] or attack the agreement and the release as in and of itself an avoidable transfer or to pursue claims against Meister for his role in the conduct of business by the AFI entities, the fiduciary of the bankruptcy estate who has to make business decisions about whether of not to pursue those claims and-investigate those claims should be completely free of any possible influence with regard to making decisions against parties that she represented as counsel pre-petition, and that was not the case here. Both clients

had a direct interest in the debtor and this indeed created a material conflict of interest for Dye.

On a subsidiary level there was also a direction made by her apparently at ... her client's insistence, that a transfer of money as part of the Ericksen settlement be made directly to her law offices which creates an interest in herself directly that is material-that could possibly be materially adverse to the interest of the bankruptcy estate.

*Id.* at 72:19-25 to 73:1-12.

In addition to lack of disinterestedness, the court also found that Dye had failed "to disclose a material conflict of interest in a timely manner," albeit inadvertently. *Id.* at 73:25 to 74:1. In Dye's favor, the bankruptcy court found that she had not interfered with discovery, nor acted, except for the nondisclosure, in any way "other than doing her best with regards to being a fiduciary of the estate...."*Id.* at 73:23-24.

*147[1][2] The order granting removal was entered on May 20, 2005, and Dye timely appealed.<u>FN6</u>

> FN6. Dye's counsel informed the Panel at oral argument that she will not return as trustee no matter the outcome of this appeal. The matter is not moot, however, because her standing is an issue for her compensation. Additionally, this order is final and appealable. *See Matter of Schultz Mfg. Fabricating Co.,* 956 F.2d 686, 691-92 (7th Cir.1992); *In re BH & P, Inc.,* 949 F.2d 1300, 1306 (3rd Cir.1991) (order removing chapter 7 trustee was final); *cf. Richman v. Straley,* 48 F.3d 1139, 1143 (10th Cir.1995) (court assumed that appeal from an order which claimed to be a *de facto* removal of a chapter 13 trustee was a final order).

## ISSUE

The sole issue is whether the bankruptcy court erred in removing Trustee Dye for "cause."

## STANDARD OF REVIEW

[3][4] Removal of a trustee under § 324 is left to the sound discretion of the bankruptcy court. *BH & P, Inc.,* 949 F.2d at 1313;*Miller v. Miller (In re Miller),* 302 B.R. 705, 709 (10th Cir. BAP 2003). A bankruptcy court necessarily abuses its discretion if it bases its decision on an erroneous view of the law or on clearly erroneous factual findings. *Warrick v. Birdsell (In re Warrick),* 278 B.R. 182, 184 (9th Cir. BAP 2002). It also abuses its discretion if it applies an incorrect legal rule. *Simantob v. Claims Prosecutor, LLC (In re Lahijani),* 325 B.R. 282, 287 (9th Cir. BAP 2005).

## DISCUSSION

### A. Trustee Lack of Disinterestedness as § 324 "Cause"

[5] A chapter 7 panel trustee is appointed by the U.S. Trustee. Section 321 provides that a person is eligible to serve as a bankruptcy trustee if such individual "is competent to perform the duties of trustee." 11 U.S.C. § 321(a)(1). In regards to chapter 7, § 701(a)(1) provides that the U.S. Trustee "shall appoint *one disinterested person* ... to serve as interim trustee in the case." 11 U.S.C. § 701(a)(1) (emphasis added). If creditors do not elect a chapter 7 trustee pursuant to § 702, then the interim trustee continues to serve as trustee in the case. See § 702(d). The plain language of the statute requires that the appointed interim trustee be "disinterested" in order to be eligible to serve. See *United States v. Ron Pair Enters., Inc.,* 489 U.S. 235, 241, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989). Dye was the appointed chapter 7 trustee and thus

was required to be disinterested. [FN7]

FN7. We do not decide whether an elected chapter 7 trustee must also be disinterested. *See* § 702(a) (silent on topic of disinterestedness).

[6] A trustee is the "legal representative" and "fiduciary" of the estate. See *U.S. Trustee v. Joseph (In re Joseph),* 208 B.R. 55, 60 (9th Cir. BAP 1997); *United States ex rel. Block v. Aldrich (In re Rigden),* 795 F.2d 727, 730 (9th Cir.1986); *In re Mehr,* 153 B.R. 430, 439 (Bankr.D.N.J.1993); 11 U.S.C. §§ 323 (providing that the trustee is the representative of the estate).

[7][8] The title "trustee" has "fiduciary significance in the equity sense," and thus the trustee "may not be the representative of any particular creditor, but must represent all creditors without partiality." *Gross v. Russo (In re Russo),* 18 B.R. 257, 270-71 (Bankr.E.D.N.Y.1982) (under Bankruptcy Act) (citing 2 *Remington on Bankruptcy* § 1117, at 580 (1956)). "Equity tolerates in bankruptcy trustees no interest adverse to the trust." *148Mosser v. Darrow,* 341 U.S. 267, 271, 71 S.Ct. 680, 95 L.Ed. 927 (1951). The chapter 7 trustee's role facilitates one of the Bankruptcy Code's fundamental concepts of "equitable distribution." *Sherwood Partners, Inc. v. Lycos, Inc.,* 394 F.3d 1198, 1203 (9th Cir.2005), *cert. denied,*--- U.S. ----, 126 S.Ct. 397, 163 L.Ed.2d 275 (2005). *See generally,* Dept. of Justice, U.S. Trustee Program, *Annual Report of Significant Accomplishments, Fiscal Year 2004, ch. 6: Trustee Oversight,* at 39 (bankruptcy trustees have "the legal duty to act in the best interest of creditors and the estate").

[9][10] It follows that a bankruptcy trustee must have no interest adverse to the estate, nor profit from her handling of the estate. She "is an independent person with no prior connection to either the debtor or the creditors. [Her] primary job is to marshal and sell assets, so that those assets can be distributed to the estate's creditors and then

close the estate." *Joseph,* 208 B.R. at 60 (quoting *In re Reed,* 178 B.R. 817, 821 (Bankr.D.Ariz.1995)); *see also*11 U.S.C. § 704 (duties of trustee).

[11] Once assigned to a particular case, a panel trustee can be removed from a pending case only if the bankruptcy court finds "cause" after notice and a hearing. *Brooks v. United States,* 127 F.3d 1192, 1193 (9th Cir.1997); 11 U.S.C. § 324(a). "[A]lthough sufficient cause is not defined in the Bankruptcy Code, it is left for the courts to determine on a case by case basis." 3 *Collier on Bankruptcy* ¶ 324.02, at 324-3 (Alan N. Resnick & Henry J. Sommer eds., 15th ed. rev.2006).

[12][13] It is well established that "cause" may include trustee incompetence, violation of the trustee's fiduciary duties, misconduct or failure to perform the trustee's duties, or lack of disinterestedness or holding an interest adverse to the estate. *Id.* at 324-3 to 324-4. Such cause must be supported by specific facts, *Schultz Mfg. Fabricating Co.,* 956 F.2d at 692, and the party seeking removal has the burden to prove them. *Alexander v. Jensen-Carter (In re Alexander),* 289 B.R. 711, 714 (8th Cir. BAP 2003), *aff'd,*80 Fed.Appx. 540 (8th Cir.2003). This listing is illustrative, but not exhaustive.

In relevant part, the Code defines a "disinterested person" as one that:

(E) does not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the debtor ..., *or for any other reason.*

11 U.S.C. § 101(14)(E).[FN8] (Emphasis supplied.)

FN8.Section 101(14) also provides that a

"disinterested person":

(A) is not a creditor, an equity security holder, or an insider;

(B) is not and was not an investment banker for any outstanding security of the debtor;

(C) has not been, within three years before the date of the filing of the petition, an investment banker for a security of the debtor, or an attorney for such an investment banker in connection with the offer, sale, or issuance of a security of the debtor;

(D) is not and was not, within two years before the date of the filing of the petition, a director, officer, or employee of the debtor or of an investment banker specified in subparagraph (B) or (C) of this paragraph; ...

11 U.S.C. § 101(14).

[14][15] A generally accepted definition of "adverse interest" is the (1) possession or assertion of an economic interest that would tend to lessen the value of the bankruptcy estate; or (2) possession or assertion of an economic interest that would create either an actual or potential dispute in which the estate is a rival claimant; or (3) possession of a predisposition under circumstances that create a bias against *149 the estate. See *Rome v. Braunstein,* 19 F.3d 54, 58 n. 1 (1st Cir.1994); *In re Roberts,* 46 B.R. 815, 826-27 (Bankr.D.Utah 1985), *aff'd in part, rev'd and remanded in part on other grounds,* 75 B.R. 402 (D.Utah 1987).[FN9]

FN9. It is also well established that professionals

employed by the estate and approved by the bankruptcy court must be disinterested. Section 327(a) provides:

Except as otherwise provided in this section the trustee, with the court's approval, may employ one or more attorneys, accountants, appraisers, auctioneers, or other professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under this title.

11 U.S.C. § 327(a).

It would be an odd rule, indeed, if a trustee's professional must be disinterested, while the trustee need not.

Such an adverse interest is "material" if it exists "by reason of any direct or indirect relationship to, connection with, or interest in, the debtor ..., or for any other reason." 11 U.S.C. § 101(14)(E). *See also Black's Law Dictionary* 998 (8th ed.2004) (defining "material" as "[h]aving some logical connection with the consequential facts" or being "[o]f such a nature that knowledge of the item would affect a person's decision-making; significant; essential....").

[16] This so-called "catch all" provision is broad enough to exclude a trustee with some interest or relationship that "would even faintly color the independence and impartial attitude required by the Code." *Kravit, Gass & Weber, S.C. v. Michel (In re Crivello),* 134 F.3d 831, 835 (7th Cir.1998) (citation omitted); 3 *Collier, supra,* ¶ 327.04[2][a][E], at 327-41.

A frequent setting for disputes over trustee removal (as it also is for attorney disqualification) is an alleged conflict of interest, and the instant case is no exception. The bankruptcy court found that Dye had a potential conflict of interest or lack of disinterestedness due to her connections with insiders Meister and Eriksen.

Dye counters that her former representation of Meister and Eriksen, in unrelated matters, did not present an *actual* conflict of interest, let alone injury or fraud, which she maintains is the required standard for her removal under § 324. Dye maintains that the bankruptcy court applied a punitive *"per se"* rule improperly based on either an appearance of impropriety or a potential conflict of interest.

### B. The Legal Standard for Removal of Trustees

The standard for removal of a trustee due to a conflict of interest under § 324 has not been formalized in the Ninth Circuit. Nationally, there are three approaches in the case law to which we will look for guidance. As noted, some of these cases involve attorneys and other professionals, not trustees.

Some courts will not remove the trustee unless there is actual injury to the estate or fraud. See *In re Freeport Italian Bakery, Inc.*, 340 F.2d 50, 54 (2d Cir.1965) (actual conflict of interest and fraud). Such harm may simply be the loss of creditor confidence to the point that "discord threatens the estate." 3 *Collier, supra,* ¶ 324.02, at 324-5. Thus, these courts will consider the best interests of the bankruptcy estate. If it "would suffer more from the discord created by the present trustee than would be suffered from a change of administration, the removal of the trustee is necessarily the better solution." *Baker v. Seeber (In re Baker),* 38 B.R. 705, 708 (D.Md.1983) (quoting *Freeport Italian Bakery,* 340 F.2d at 55);*see *150 also In re Microdisk, Inc.,* 33 B.R. 817, 819 (D.Nev.1983).

Another approach is *per se* disqualification if an individual is determined to be not disinterested, typically under the plain terms of §§ 101(14)(A)-(D), without analyzing the effect of any such conflict on the estate. The majority of courts applying this standard do so on the theory that the court cannot use its equitable powers to disregard unambiguous statutory language. *See, e.g., Michel v. Fed'd Dep't Stores, Inc. (In re Fed'd Dep't Stores, Inc.),* 44 F.3d 1310, 1318-19 (6th Cir.1995). Cf. *Movitz v. Baker (In re Triple Star Welding, Inc.),* 324 B.R. 778, 790 (9th Cir. BAP 2005) (noting, in a case involving the attorney for the estate, that the court cannot approve employment of a person who is not disinterested); *First Interstate Bank of Nev., N.A. v. CIC Inv. Corp. (In re CIC Inv. Corp.),* 175 B.R. 52, 56 & n. 4 (9th Cir. BAP 1994) (holding, in a case involving professionals but not a trustee, that a court must follow the unambiguous language of §§ 327(a) and 101(14), but reserving judgment in regards to an attorney with a claim arising solely from services rendered in the bankruptcy case). The Fourth, Sixth and Eighth Circuits have adopted a *per se* rule in disqualifying attorneys who are not disinterested. *See Harold & Williams Dev. Co. v. U.S. Trustee (In re Harold & Williams Dev. Co.),* 977 F.2d 906, 909-10 (4th Cir.1992) (but holding that the congressionally established per se rules are "carefully delineated and narrowly tailored"); *Childress v. Middleton Arms, L.P. (In re Middleton Arms, L.P.),* 934 F.2d 723, 725 (6th Cir.1991); and *Pierce v. Aetna Life Ins. Co. (In re Pierce),* 809 F.2d 1356, 1362-63 (8th Cir.1987).

The last approach, formulated by the First and Third Circuits, holds that there is no bright-line rule, but that each case "must be judged in the perspective of the particular case and the facts presented." 3 *Collier, supra,* ¶ 327.04[2][a][I], at 327-35. These courts apply a nonexhaustive list of factors to determine whether a conflict of interest, even if it arises under § 101(14), is sufficient for removal or disqualification because of a potential for a materially adverse effect upon the estate. See *In re Martin,* 817 F.2d 175, 182 (1st Cir.1987) and

*BH & P Inc.*, 949 F.2d at 1313, as clarified in *In re Marvel Entm't Group, Inc.*, 140 F.3d 463, 476-77 (3d Cir.1998). Both of these cases, which are relied upon by Dye, deserve closer scrutiny.

*Martin* involved a debtor's attorney who duly disclosed that he had taken a mortgage in the chapter 11 debtor's real property, prepetition, in order to secure his fees. The case was then converted to chapter 7 and the attorney sought to enforce the mortgage. The bankruptcy court denied his motion because, according to the plain language of § 101(14)(A) and the disinterested requirement of § 327(a), the attorney was a "creditor," and therefore not disinterested. *Id.* at 177.

On appeal, the First Circuit rejected this *per se* approach as "a literalistic reading [which] defies common sense and must be discarded as grossly overbroad." *Martin*, 817 F.2d at 180. It adopted a "full panoply of events and elements" test to determine whether such conflict of interest was materially adverse to the estate and creditors, and elucidated a nonexhaustive list of factors to consider. *Id.* at 182. The First Circuit then remanded the case for such an analysis.

Some of those factors, which are relevant to our case, include the likelihood that a potential conflict might turn into an actual one, the influence the conflict might have in subsequent decisionmaking, and *151 how the matter is perceived by creditors and other parties in interest. *Id.*

In a 1991 case, the Third Circuit was similarly faced with making a *per se* decision, *viz.*, the removal of a trustee because he represented multiple debtors and therefore was a "creditor," under § 101(14)(A), by virtue of having filed claims against the related estates. See *BH & P*, 949 F.2d at 1310. It opined that it would be unfair and unsound from a standpoint of administrative efficiency and economy to disqualify a trustee on that basis alone, and that such an interpretation of the Code was "overbroad."

*Id.* at 1310.

First, the Third Circuit correctly reasoned that § 101(14)(A) was inapplicable because it was intended to disqualify only creditors with personal claims and those "holding" prepetition adverse interests, not trustees having claims against the estate solely in a representative capacity. See *Tevis v. Wilke, Fleury, Hoffelt, Gould & Birney, LLP (In re Tevis)*, 347 B.R. 679, 688 (9th Cir. BAP 2006) ("To *represent* an adverse interest means to serve as an attorney for an entity holding such an adverse interest.")

Second, it adopted *Martin* and held that the inquiry as to whether the "single trustee in jointly administered estates with interdebtor claims" had a materially adverse interest should be "evaluated prospectively on a case-by-case basis," by an examination of "the full panoply of events and elements." *BH & P*, 949 F.2d at 1312-13. The Third Circuit concluded that the disputed nature of the proofs of claim and the need for advocacy of the competing interests was a materially adverse potential or actual conflict of interest. *Id.* at 1313. It therefore affirmed the bankruptcy court's removal of the trustee and his attorneys. *Id.* at 1313-14.

Appellees concede, in their responsive brief, that the proper analysis for our case is the *Martin* "full panoply of events and elements" or totality-of-circumstances test. In addition, Dye encourages the panel to adopt *BH & P's* approach, and suggests the use of several additional factors which she has gleaned from the case law.[FN10]

> FN10. Dye recommends an 11-point test including the following factors: (1) the seriousness of a potential adverse interest; (2) whether the potential conflict ever ripened into a materially adverse interest; (3) whether the estate suffered injury as a consequence of any materially adverse interest; (4) the extent to

which, if at all, the potentially adverse interest was disclosed and when it was disclosed; (5) the extent that the potential conflict was not disclosed for some period of time, the extent to which, if at all, the trustee was culpable with regard to the nondisclosure; (6) the extent to which, if at all, the trustee's conduct "was suggestive of irregularity"; (7) the extent to which, if at all, the moving party was dilatory in seeking removal; (8) the effect of removal on estate administration, including a consideration of whether the movant is adverse to the trustee in litigation and may be motivated by litigation tactics; (9) whether a prophylactic purpose could be served by removing the trustee; (10) the position of the U.S. Trustee regarding the motion; and (11) the fairness of removal to the trustee under the circumstances.

[17] We agree with this approach to the extent that the question of materiality is addressed in the disinterestedness determination. Whether an interest is "materially adverse" necessarily requires an objective and fact-driven inquiry. See *Rus, Miliband & Smith, APC v. Yoo (In re Dick Cepek, Inc.)*, 339 B.R. 730, 739-40 & n. 10 (9th Cir. BAP 2006) (holding that where no *per se* disqualification exists, "the inquiry into whether the professional holds interests adverse to the estate, is disinterested or otherwise is impaired by conflict of interest (actual or potential) is necessarily case- and fact-specific."); *In re Guy Apple Masonry Contr'r, Inc.*, 45 B.R. 160, 166 (Bankr.D.Ariz.1984) (analyzing all the **\*152** evidence to decide whether an actual conflict of interest due to dual representation was materially adverse).[FN11] We also generally agree that a court should apply a totality-of-circumstances analysis in determining other "causes" for removal under § 324. We do not subscribe to a rigid application of factors, however, but view them as aids for the court's discretionary review.

FN11. Moreover, because our facts only implicate the "catch-all" provision of §

101(14)(E), we do not need to "throw out the baby with the bath water." In other words, we do not need to decide whether or not a *per se* rule should be applied to a lack of disinterestedness based on §§ 101(14)(A)-(D).

In fact, the Third Circuit later circumscribed its holding in *BH & P* in a case where the professional was clearly a creditor of the debtor and thus not disinterested under the plain terms of § 101(14)(A). It stated:

We similarly reject the argument that our decision in *In re BH & P* authorizes bankruptcy courts to take a "flexible approach" in determining whether a professional who is not "disinterested" under the statutory definition may nevertheless be employed pursuant to Section 327(a). In *In re BH & P*, we were required to interpret the phrase "actual conflict of interest" in Section 327(c). We found this phrase to be ambiguous and thus held that a bankruptcy court should have discretion "in determining whether an actual conflict exists 'in light of the particular facts of each case.' " *In re BH & P*, 949 F.2d at 1315 (citations omitted). In the current case, we must interpret and apply Section 327(a), not Section 327(c), and as we have explained, we find no ambiguity in the relevant language of Section 327(a).

*U.S. Trustee v. Price Waterhouse*, 19 F.3d 138, 142 (3d Cir.1994). The court then reversed the order of employment.

### C. Application to Our Facts

[18] Having adopted the totality-of-circumstances

approach to determine lack of disinterestedness under §
101(14)(E) as cause under § 324, we now examine the
facts and procedure in our case.

Indeed, the bankruptcy court made the precise analysis. It
found that Dye had certain social connections with
Meister, whom she had represented when he was an
insider of Debtor, and a past professional connection with
Eriksen (Meister's domestic partner), who was an investor
and limited partner in the AFI Entities (Dye described him
as a "partner" in her letter to Eisenberg during the
settlement negotiations). Both individuals had a direct
interest in, or adverse interest to, Debtor at the time she
represented them.

[19] However, Dye argues that insider status must be a
"present" one and maintains that such individuals were no
longer affiliated with AFI at the time of the bankruptcy
petition. Dye urges that whether circumstances exist as
would create a conflict of interest must be considered as of
the time of appointment. *In re Lee Way Holding Co.*, 102
B.R. 616 (S.D.Ohio 1988).

[20] The facts and law support the bankruptcy court's
ruling and make practical sense. The definition of
"insider" is open-ended because the term is not precise. 3
*Collier, supra,* ¶ 327.04[2][a][iii][C], at 327-36 to 327-37.
"[I]nsider status may be based on a professional or
business relationship with the debtor, in addition to the
Code's *per se* classifications, [ FN12] where such
relationship compels the conclusion that the individual or
entity has a relationship with the debtor, close enough to
gain *153 an advantage attributable simply to affinity
rather than to the course of business dealings between the
parties." *Friedman v. Sheila Plotsky Brokers, Inc. (In re
Friedman),* 126 B.R. 63, 70 (9th Cir. BAP 1991).

FN12.Section 101(31)(B) provides that insiders
of a corporate debtor include:

(i) director of the debtor;

(ii) officer of the debtor;

(iii) person in control of the debtor;

(iv) partnership in which the debtor is a
general partner;

(v) general partner of the debtor; or

(vi) relative of a general partner, director,
officer, or person in control of the debtor.

11 U.S.C. § 101(31)(B).

The bankruptcy court properly considered the larger
picture of these interrelationships in order to determine
their materiality. At the time Dye formed business and
social relationships with Meister and Eriksen, they were
insiders. Dye claimed that she did not know about
Meister's problems with AFI, but there was colorable
evidence that she knew that Eriksen's reasons for wanting
to withdraw his investment were closely tied to the fallout
from the Ponzi scheme. Dye was in an adversarial position
with AFI in representing Eriksen and negotiated a
settlement for him which she could have believed would
withstand scrutiny by any future bankruptcy trustee. As
fate had it, she was that trustee.

[21] In addition, the court correctly found that these
associations could conceivably have influenced Dye's
decision not to assert a recovery action against Eriksen [FN13]
or litigation against Meister. Then, Dye received payment
from AFI as part of the settlement. These relationships
created suspicion and discord between Dye and the estate's

creditors which was detrimental to the administration of the estate.[FN14]

FN13. Dye maintains that the release made Eriksen judgment proof. However, the court found that no signed release had been put into evidence. Nor does the record reflect that any judgment against Eriksen would be uncollectible.

FN14. Dye further argues that "adverse interest" in § 101(14)(E) only refers to personally adverse interests and does not encompass her past representational interests. She misapplies *BH & P*, which opined that § 327(a) prohibits conflicts created by *concurrent* adverse legal representation. *See* § 327(a) (authorizing employment of professionals "that do not *hold or represent* an interest adverse to the estate, and that are disinterested persons ....") (emphasis added).

Dye was not an employed professional, but an appointed trustee. Her interests were past personal as well as professional relationships which could have predisposed her under circumstances that created a bias against the estate in her present trusteeship. *See Roberts, 46 B.R. at 827.*

A trustee/fiduciary must be free from any hint of bias. All of this evidence fits within the parameters of a materially adverse interest based on either an appearance of impropriety or a potential conflict of interest. Either is a viable cause for removal.

[22][23] The Code's definition of disinterestedness "covers not only actual impropriety, but the appearance of impropriety as well." *In re Paolino, 80 B.R. 341, 345 (Bankr.E.D.Pa.1987); see also Martin, 817 F.2d at 180-81*

("Section 327 is intended, however, to address the appearance of impropriety as much as its substance, to remove the temptation and opportunity to do less than duty demands."); *In re Vebeliunas, 231 B.R. 181, 191-92 (Bankr.S.D.N.Y.1999)* ("[t]o be disinterested is 'to prevent even the appearance of a conflict' " and a disinterested person " 'should be divested of any scintilla of personal interest which might be reflected in his decision concerning estate matters.' ") (citations omitted).[FN15]

FN15. Historically, in view of the strict impartiality requirement, some courts presumptively disqualified trustees based on any "prejudicial association" with interests adverse to those of the estate. 6 *Collier, supra,* ¶ 702.08[1], at 702-18 to 702-19. This strict standard was reinforced in state ethics rules, particularly Canon 9 of the American Bar Association ("ABA") Model Code of Professional Responsibility ("A lawyer should avoid even the appearance of professional impropriety.")

Although the ABA Code has been replaced by the ABA Rules of Professional Conduct, which expressly eliminates the "appearance of impropriety" standard (see ABA Rule 1.9, comment [5] ), and although California has neither adopted the ABA Code or Rules nor has its own such standard, the Code and case law illustrates that federal courts have the inherent power to apply it. *See In re Glenn Elec. Sales Corp., 99 B.R. 596, 598-99 (D.N.J.1988); In re Snyder, 472 U.S. 634, 645 n. 6, 105 S.Ct. 2874, 86 L.Ed.2d 504 (1985)* (holding that the state code of professional responsibility did not by its own terms apply to attorney sanctions in the federal courts, but that federal courts in exercising their inherent power under the standards imposed by federal law may charge attorneys with the knowledge of, and conformity to, the state codes); *see also*

*U.S. Trustee v. S.S. Retail Stores Corp. (In re S.S. Retail Stores Corp.)*, 211 B.R. 699, 703 (9th Cir. BAP 1997) (although California law provides for a waiver of a conflict, the Bankruptcy Code does not allow for such waiver under §§ 101(14) or 327(a)); *In re Granite Partners, L.P.*, 219 B.R. 22, 34 (Bankr.S.D.N.Y.1998) (same).

\*154[24] Even if an appearance of impropriety is not an adequate basis upon which to disqualify an employed professional, *see Tevis*, 347 B.R. at 688 (stating that what constitutes material adversity for a lawyer is defined by neither bankruptcy law nor other federal law, but by California state law), it can be "cause" for a *trustee's* removal under § 324. Such a condition tends to create disharmony and lack of confidence among the creditor body.

Furthermore, courts which eschew the appearance of impropriety standard will authorize the bankruptcy court to remove a trustee or attorney with a potential conflict. The Third Circuit, with respect to attorney representation, held:

(1) Section 327(a), as well as § 327(c), imposes a per se disqualification as trustee's counsel of any attorney who has an *actual* conflict of interest; (2) the district court may within its discretion-pursuant to § 327(a) and consistent with § 327(c)-disqualify an attorney who has a *potential* conflict of interest and (3) the district court may not disqualify an attorney on the *appearance* of conflict alone.

*Marvel Entm't Group*, 140 F.3d at 476 (emphasis supplied).

The Ninth Circuit has held that disqualification is appropriate where trustee's counsel previously represented an electric company and had a potential conflict of interest in pursuing a cause of action against such company on behalf of the estate. *Chugach Elec. Ass'n v. U.S. Dist. Ct.*, 370 F.2d 441, 442-43 (9th Cir.1966). The court concluded:

A likelihood here exists which cannot be disregarded that [counsel's] knowledge of private matters gained in confidence would provide him with greater insight and understanding....

Where conflict of interest or abuse of professional confidence is asserted, the right of an attorney freely to practice his profession must, in the public interest, give way in cases of doubt.

*Id.* at 443-44.

Here, the loss of Appellees' confidence in Trustee Dye was not simply tactical, but was based on perceptions of partiality due to her prior connections with Meister and Eriksen and her receipt of the AFI payment.

The bankruptcy court also considered the factor of Dye's nondisclosure regarding a material conflict of interest. At the time of her appointment as chapter 11 trustee, Dye's Declaration of Disinterestedness merely referred to her previous representation of an unnamed investor. Dye did not mention her representation of Meister, identify Eriksen, nor either explain the connection between Meister and Eriksen or Mister's connection to AFI.[FN16]\*155 She did not make full disclosure until four years later, prompted by the litigation with Appellees, after she had been appointed the chapter 7 trustee.

FN16. Section 1104 provides that the chapter 11 trustee must be a "disinterested person." *See* 11 U.S.C. § 1104(b) and (d); 7 *Collier, supra*, ¶ 1104.02[7][a] at 1104-27.

[25][26] It is axiomatic that a fiduciary has a duty to disclose any connections with the debtor, creditors, or any other party in interest. *See In re Haldeman Pipe & Supply Co., 417 F.2d 1302, 1304 (9th Cir.1969); Triple Star Welding, 324 B.R. at 789.* Failure to do so, even if inadvertent, can be a relevant factor for the bankruptcy court's consideration of "cause" for a panel trustee's removal. Such nondisclosure could serve as a basis for the creditors to lose confidence in the trustee, which is precisely what the court found had occurred in this case. Therefore, the bankruptcy court did not abuse its discretion in finding that such nondisclosure supported the "cause" necessary to require removal under § 324.

Based on the foregoing analysis, we conclude that the bankruptcy court did not err in its determination that Dye was not disinterested because she had a materially adverse interest which created ongoing disharmony in the administration of the estate. Thus, these factors were sufficient to constitute cause for her removal under § 324.

## CONCLUSION

[27] Cause for removal of an appointed panel trustee under § 324(a) is not susceptible to sharp definition, but is determined on a case-by-case, totality-of-circumstances approach, subject to the bankruptcy court's broad discretion.

The bankruptcy court did not err in determining that Dye's lack of disinterestedness, as evidenced by having a "materially adverse interest to the interests of the estate or any class of creditors or equity security holders," was cause for her removal. Lack of disinterestedness, as § 324 cause, may also consist of an appearance of impropriety or the trustee's failure to make disclosures of connections, factors which were also properly considered by the bankruptcy court under its totality-of-circumstances approach.

We conclude that the bankruptcy court neither erred nor abused its discretion in determining that cause existed to remove Dye as trustee. Therefore, we **AFFIRM.**

9th Cir.BAP (Cal.),2006.
In re AFI Holding, Inc.
355 B.R. 139, 47 Bankr.Ct.Dec. 92, Bankr. L. Rep. P 97,104, 06 Cal. Daily Op. Serv. 10,575, 2006 Daily Journal D.A.R. 15,028

PRINTED FOR
ADMINISTRATIVE OFFICE—U.S. COURTS
BY THOMSON REUTERS/WEST—SAN FRANCISCO

The summary, which does not constitute a part of the opinion of the court, is copyrighted
© 2008 Thomson Reuters/West.