**In re Gerald M. SHEEHAN and Shari Dee Sheehan, Debtors.**

**UNITED STATES TRUSTEE, Plaintiff,**

v.

**Rhonda REPP, Defendant.**

**Bankruptcy No. B–91–12218–BHC–RGM. Adv. No. 95–61.**

United States Bankruptcy Court, D. Arizona.

Aug. 18, 1995.

---

Michael P. Lane, Brandes, Lane & Joffe, Phoenix, AZ, for Rhonda Repp.

Adrianne Kalyna, U.S. Trustee, Michele Hankins, Asst. U.S. Trustee, Phoenix, AZ.

## OPINION AND ORDER DENYING THE U.S. TRUSTEE'S MOTION TO REMOVE CHAPTER 7 TRUSTEE

ROBERT G. MOOREMAN, Bankruptcy Judge.

This matter is before the Court pursuant to the U.S. Trustee's Motion to Remove Rhonda Repp ("Repp"), the Chapter 7 Trustee, from this case and Repp's objection thereto. Hearings were held on July 24, 25 and 26, 1995 after which the matter was taken under advisement. After due consideration of the pleadings, opening statements and the joint pre-trial statement as well as

the record herein including testimony and exhibits, and under the present posture of the Chapter 7 case, the Court finds and concludes the following in making its decision.

1. Repp was originally appointed by Virginia Mathis, the prior U.S. Trustee for the District of Arizona Region, to the Chapter 7 panel of trustees on May 16, 1988 to serve as trustee for the five northern Arizona counties.

2. Repp is a member in good standing of the State Bar of Arizona and a sole practitioner located in Prescott, Arizona.

3. On June 16, 1993, Repp voluntarily stepped aside from the panel of trustees declining future cases but continuing to administer open cases and to close pending cases, including this case.

4. In January, 1991, Repp hired Laura Carey as a secretary/receptionist for her law office and for Bankruptcy Trustee work. Ms. Carey's employment was terminated in July 1993 after verification of her defalcations.

5. Repp has duly administered and closed more than 2000 cases in which she served as Chapter 7 trustee for the five northern counties of Apache, Coconino, Mohave, Navajo and Yavapai.

6. Victoria Page currently is employed by Repp as her case administrator and she assists on cases in which Repp is still serving as the Chapter 7 trustee for the purpose of finally administering and closing the estates.

7. Ms. Carey misappropriated funds from Repp's law practice, including from various bankruptcy estates being administered by Repp during part of 1992 and the beginning of 1993. According to testimony and the Joint Pre-Trial Statement Ms. Carey has been convicted and sentenced for the theft of funds in excess of $25,000.

8. Repp suffered personal losses as a result of Ms. Carey's thefts, but should recover approximately 50% of her losses from her insurance company.

9. The Debtors herein, the Sheehans, filed a petition under Chapter 7 on October 18, 1991. Repp was appointed as the interim trustee, and after the Section 341 First Meeting of Creditors, became the permanent trustee.

10. Repp signed the Trustee's Final Report ("TFR") in this case on September 13, 1994 under penalty of perjury. The TFR was filed on October 11, 1994. The TFR was also submitted to United States Trustee's office.

11. A deposit for $132.42 is listed on the TFR and labeled as "interest from funds in the wrong account." This deposit was made by Repp from her personal law office account to make up for lost interest on the money stolen by Ms. Carey from the proceeds of two trustee's sales which were held in February, 1992 and November, 1992.

12. In November 1994, Lynn Layton, a bankruptcy analyst and C.P.A. with the United States Trustee's office, performed an office review of Repp's files and found hand written notes in two cases asking whether "Laura" had taken money from the estates. Ms. Layton's findings were reported to Thomas Kadotani, the Senior Bankruptcy Analyst with the United States Trustee's office, on December 1, 1994.

13. Mr. Tom Kadotani, Senior Bankruptcy Analyst, spoke with Repp by telephone on December 2, 1994 regarding Ms. Layton's findings and during that conversation, Repp stated that, to her knowledge, Ms. Carey had taken $5,815 from three different bankruptcy estates. Repp further stated she had discovered the thefts during November, 1993 and that she had not informed the United States Trustee's office because the Prescott Police Department was handling the investigation at her request. She further indicated to Mr. Kadotani that if she had reported the theft to the United States Trustee at that time there would have been a complete audit of all of her other cases which would have been disruptive to her office.

14. Repp had retained Victoria Page to audit all of her bankruptcy cases to identify cases from which Ms. Carey had taken funds. Ms. Page determined that Ms. Carey had taken funds from this case and the cases of Company One Construction, Inc., 91–10701–

PCT–GBN and Bill and Mickey Bilbrey, 92–6885–BHC–RGM.

15. Ms. Carey stole $5,420 from the instant case as proceeds from the sale of a boat, a motorcycle and ceiling fans.

16. In her office procedures Repp never authorized Ms. Carey to cash any bankruptcy estate checks.

17. The theft from the three bankruptcy estates involved assets sold at a trustee's sale on November 6, 1992. Ms. Carey deposited the checks into Repp's personal law practice account, to which Ms. Carey had access, rather than the accounts of the three estates, to which she did not.

18. Repp is subject to audit and review by the Office of the United States Trustee and the Office of the Inspector General ("OIG") of the United States Justice Department which conducted an audit of Repp's operations in 1989 and noted Repp was not maintaining a check log to record incoming checks. Repp responded to the OIG's report stating that she agreed with the auditor's suggestion regarding maintaining a log of all incoming checks and would incorporate this suggestion into procedures in the future and as the record shows she believed she had done so.

19. The Office of the United States Trustee conducted an Accelerated Restricted Scope review of Repp's trusteeship in July, 1993 when the defalcations were discovered and the review again stated she had failed to maintain a check log to record incoming checks.

20. Repp acknowledges receiving the Handbook for Chapter 7 Trustees which specifically instructs trustees that suspected violations of the U.S. Criminal Code related to bankruptcy cases must be reported to the United States Attorney and coordinated through the Office of the United States Trustee.

21. The U.S. Trustee is seeking to have Repp removed as Trustee in this case pursuant to 11 U.S.C. § 324(a). In the event Repp is removed as Trustee under that section, it will have the effect of removing her as Trustee in all cases which she is still serving as the Chapter 7 Trustee. 11 U.S.C. § 324(b) states:

> (b) Whenever the court removes a trustee or examiner under subsection (a) in a case under this title, such trustee or examiner shall thereby be removed in all other cases under this title in which such trustee or examiner is then serving unless the court order otherwise.

 It is clear that removal of a Trustee is an extreme remedy even where a trustee has acted negligently. *In re Cee Jay Discount Stores, Inc.,* 171 B.R. 173, 175 (Bankr. E.D.N.Y.1994). What constitutes sufficient cause for removal is not defined in the Bankruptcy Code, but is instead left for the courts to determine on a case-by-case basis. *In re Haugen Construction Service, Inc.,* 104 B.R. 233, 240 (Bankr.D.N.D.1989).

 The U.S. Trustee claims that Repp's lack of reporting Ms. Carey's thefts of funds from the bankruptcy estates to the U.S. Trustee and/or the U.S. Attorney is a violation of a duty imposed on trustees. Pursuant to 18 U.S.C. § 3057 a trustee is required to report suspected violations of the United States Criminal Code, which contains sections which relate specifically to bankruptcy, to the U.S. Trustee and/or the U.S. Attorney. The U.S. Trustee argues that the thefts by Ms. Carey are *bankruptcy crimes* and that Repp in effect committed a bankruptcy crime because she was required to report the thefts by Ms. Carey to the federal authorities. Repp testified among other things that she did not report the thefts because she did not believe a *bankruptcy crime* had been committed.

The United States Code contains a section which deals with theft from bankruptcy estates. Title 18 deals with crimes and criminal procedure and Chapter 9 of Title 18 deals specifically with *bankruptcy crimes.* At the time the subject thefts occurred, 18 U.S.C. § 153, which deals with embezzlement by a trustee or officer from a bankruptcy estate, read as follows:

> Whoever knowingly and fraudulently appropriates to his own use, embezzles, spends, or transfers any property or secretes or destroys any document belonging

to the estate of a debtor which came into his charge as trustee, custodian, marshal, or other officer of the court, shall be fined under this title or imprisoned not more than five years, or both.

This section was amended in 1994. The amendment only applies to cases filed after October 22, 1994. See Pub.L. 103–394. The 1994 amendment changed 18 U.S.C. § 153 to read as follows:

(a) Offense.—A person described in subsection (b) who knowingly and fraudulently appropriates to the person's own use, embezzles, spends, or transfers any property or secretes or destroys any document belonging to the estate of a debtor shall be fined not more than $5,000, imprisoned not more than 5 years, or both.

(b) Person to whom section applies.—A person described in this subsection is one who has access to property or documents belonging to an estate by virtue of the person's participation in the administration of the estate as a trustee, custodian, marshal, attorney, or other officer of the court *or as an* agent, *employee,* or other person engaged by such an officer to perform a service with respect to the estate. (Emphasis supplied)

The earlier version of 18 U.S.C. § 153 applies to this case as this case was filed over three years before the effective date of 18 U.S.C. § 153, as amended. The applicable statute makes theft or embezzlement *by a trustee* or other officer of the court a *bankruptcy crime,* while the statute now specifically refers to *employees* of trustees and other officers of the court. It appears that the amendment would otherwise apply to a situation such as we have here, where duties regarding bankruptcy estates are delegated to employees of officers of the court. However, the statute which is applicable to this case does not designate a theft by an employee of a trustee as a *bankruptcy crime.*

The Court therefore on this record finds and concludes that the thefts committed by Ms. Carey were not *bankruptcy crimes* under 18 U.S.C. § 153 and, of course, Repp did not cause the thefts in question, but was instead the victim of the crime of her employee.

The 1992 Handbook for Chapter 7 Trustees, section H is entitled "Referral of Potential *bankruptcy crimes.*" See Trial Exhibit "17," page 21. Section H states that 18 U.S.C. § 3057 imposes a duty on Chapter 7 Trustees to report suspected violations of the statutes relating to *bankruptcy crimes* to the appropriate United States Attorney. The U.S. Trustee urges that Repp violated this section of the handbook. Repp testified that she reported the defalcation to the Prescott Police. The main reason she did not report the thefts to the U.S. Trustee or the U.S. Attorney was that she did not believe a *bankruptcy crime* had been committed. In accordance with this Court's finding that no *bankruptcy crime* occurred pursuant to 18 U.S.C. § 153, the Court finds and concludes that under the facts of this case Repp had no legal duty inform the U.S. Trustee or the U.S. Attorney of the thefts. It would obviously have been a good policy for a Trustee to follow this procedure in administering estates regardless of the applicable law.

■ The U.S. Trustee's claim that a *bankruptcy crime* had been committed was its principal argument in favor of removing Repp pursuant to 11 U.S.C. § 324(a), but it was not the only basis by which removal was sought. The U.S. Trustee urged that Repp did not follow U.S. Trustee office procedures after being notified by the OIG and the U.S. Trustee's Office that instituting certain procedures would be in her best interest. Repp testified that she did in fact institute the requested procedures, but that the procedure lapsed at some point. Repp further testified that the procedure, regarding the keeping of a check log, is now being utilized currently by her office and she was unaware of the lapsed log. The Court believes Repp's testimony on this issue. Also, it is not clear to the Court that logging in the estate checks would have prevented the subject defalcations or loss.

■ The U.S. Trustee also argues that Repp committed perjury by signing various reports containing false information which were required to be filed with the U.S. Trustee's Office by Chapter 7 Trustees. Repp testified that she did not actually prepare the

reports herself, but she did review the reports before signing them as the responsible person. An example of the entry that the U.S. Trustee believes is false is contained in the TFR Repp filed in this case. See Trial Exhibit "1." One entry is for "interest from funds in wrong account." Repp testified that this entry read this way because the funds came from Repp's personal account and that the entry was not an attempt to deceive the U.S. Trustee. The TFR in this case was reviewed by a representative of the U.S. Trustee's Office and that representative signed off on the TFR on October 7, 1994. See Trial Exhibit "1." The Court finds and concludes that the entries the U.S. Trustee objects to in the various reports filed by Repp are not patently false under the facts and circumstances of this case and that Repp's explanation of the entries at trial is sufficient for the Court to hold that any of the mistakes in the various reports are harmless in the overall context of this case and not sanctionable.

■ Another basis for the U.S. Trustee's motion to have Repp removed involved the sale of a boat which was an asset of this bankruptcy estate (the proceeds of which were stolen by Ms. Carey). It is undisputed that Repp, upon the filing of the case, received an offer of $6,000 for the boat from the same individual who purchased the boat at the noticed November 6, 1992 sale for $5,000. The U.S. Trustee claims the estate suffered a $1,000 loss, plus interest, due to negligence on the part of Repp. Repp testified that the $6,000 offer was received prior to the 341 meetings of creditors held at Prescott, Arizona on December 20, 1991 and again on January 23, 1991 and prior to receiving copies of the Debtor's schedules and that she did not know the boat's value or whether the boat was an unencumbered asset when the $6,000 offer was made. The $6,000 offer was withdrawn prior to Repp having available the information necessary to determine whether the sale could be processed. The boat did ultimately sell for $5,000, which was the value listed in the schedules. The Court finds and concludes that Repp was not negligent in not accepting the $6,000 offer because of the timing of the offer and that

under the facts presented, the ultimate sale of the boat was indeed proper.

■ The U.S. Trustee additionally argues that Repp was negligent for leaving the boat in the Debtor's possession in Lake Havasu City, Arizona until it was sold. Under the realities of the facts presented Chapter 7 Trustees do not have budgets like Chapter 13 Trustees. Repp was the Trustee for all of northern Arizona. Her territory was and is extremely large. She effectively saved administrative expenses by not moving such assets and by relying on the representations of debtors that the assets were in fact safe and secure. It is a given that a trustee has a fiduciary obligation to conserve the assets of the estate and to maximize distribution to creditors. *In re Rigden,* 795 F.2d 727, 730 (9th Cir.1986); *In re Michael,* 183 B.R. 230, 236 (Bankr.D.Mont.1995). The Court is also aware that because of the large number of "no asset" Chapter 7 cases in the District of Arizona over the last 10 years, it has been a common practice for a Chapter 7 Trustee to utilize such procedures to maximize the possible return for creditors and administrative claimants. The Court finds and concludes that in regard to the boat, the lack of estate funds initially held by the Chapter 7 Trustee and the lack of storage facilities, leaving the boat in the Debtor's possession and relying on his representations was proper under the circumstances.

■ Case law regarding the removal of a trustee has established precedent that a trustee is not to be removed unless actual injury or fraud occurs. *In re Cee Jay Discount Stores, Inc.,* 171 B.R. at 176; *In re Lundborg,* 110 B.R. 106, 108 (Bankr.D.Conn. 1990). Mistakes in discretionary judgment which are reasonable, do not warrant removal. *Id.* Courts must also consider the best interest of the estate when determining whether to remove a trustee. *In re Lundborg, supra.*

It is undisputed on this record that Repp has fully reimbursed the estates for any losses from which Ms. Carey stole funds. On this record Repp reimbursed the estates for all lost funds and no actual injury occurred to any of the other estates from which funds were stolen. The estates were made whole

by Repp based on her testimony, which the Court believes. Repp's only mistake was relying on Ms. Carey and this type of mistake does not call for Repp's removal under any of the scenarios presented.

The U.S. Trustee relies heavily on the 1992 Handbook for Chapter 7 Trustees and the 1993 District of Arizona Supplement to Handbook for Chapter 7 Trustees. See Trial Exhibit "17." The U.S. Trustee cited the handbook and supplement regarding various subjects, including how Repp prepared various reports for the U.S. Trustee's office, regarding control and preservation of estate property, and regarding the administration of estate assets and bank account procedures.

At trial, the U.S. Trustee presented the handbook as containing the rules which a Chapter 7 trustee must follow. This handbook is an administrative and procedural work of art. However, the handbook itself, on page (i), states that it "represents a statement of *operational policy* and is only intended as a working guide for panel trustees under United States Trustee supervision." It appears to the Court that many of the sections in the handbook are presented as recommended procedures to follow as opposed to hard and fast rules.

It is undisputed that Repp has been a trustee during most of the time the panel trustee program was placed under the supervision of the U.S. Trustee's Office. Repp testified that there was not a large amount of training and that there was no instruction on how to set up a trustee's office further than the original handbook. The handbook at the time Repp became a trustee of course was an excellent tool, but not as comprehensive as the 1992 handbook. Her case load was expected to be 25 to 30 cases per month when Repp started as a trustee for the 5 northern counties, but she testified that at the time the Sheehan case was filed her office was receiving over 100 case per month. With that caseload, a Trustee would necessarily be required to delegate work on the files to employees. Repp also testified that Victoria Page now handles the day-to-day administrative duties relating to the remaining bankruptcy cases in which Repp is serving as Trustee and she in turn supervises the administration of the estates for which she is responsible.

The Court, on this record, finally finds and concludes that the actions taken by Repp relating to the thefts, as well as relating to the operations of her office, were diligent and reasonable in light of what is expected of a prudent person under similar circumstances and that no cause exists to remove Repp from this case pursuant to 11 U.S.C. § 324(a). See *In re Haugen Construction Service, Inc.,* 104 B.R. at 240.

Accordingly,

IT IS ORDERED denying the U.S. Trustee's Motion to Remove Chapter 7 Trustee.