# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

———————

No. 14-20588

———————

United States Court of Appeals
Fifth Circuit

**FILED**

September 25, 2015

Lyle W. Cayce
Clerk

In the Matter of:  IFS FINANCIAL CORPORATION,


Debtor


-----------------------------


W. STEVE SMITH,


Appellant


v.


JUDY A. ROBBINS, United States Trustee; BLITZ HOLDINGS
CORPORATION,


Appellees

No. 14-20588

———————————

Appeal from the United States District Court
for the Southern District of Texas

———————————

Before HIGGINBOTHAM, DENNIS, and HAYNES, Circuit Judges.

PATRICK E. HIGGINBOTHAM, Circuit Judge:

W. Steve Smith, trustee of a complex Chapter 7 estate, engaged his firm to work for the estate with court approval. Smith, his lead appellate attorney and wife Blanche Smith, and their two children traveled to New Orleans for an oral argument. They arrived three days early and stayed the night afterwards. Smith later submitted a large, unitemized bill for his firm's work that included a request to distribute $3,486.37 in estate funds to his firm for trip expenses. The bankruptcy court disallowed much of the requested amount and ordered Smith to show why he should not be removed as trustee under § 324(a) of the bankruptcy code. After a hearing, the court removed Smith, in part because his *prior* conduct convinced it that his conduct in this case was intentional. Under § 324(b), Smith was also removed in all of his other pending cases. He appealed the removals. The district court affirmed, and we now affirm the district court.

I

IFS Financial Corporation ("IFS") was the operating entity for the "Interamericas" group of corporations. It generated income primarily from an insurance and a mortgage subsidiary, and served a complicated web of corporate entities. In 1997 or 1998 Interamericas merged with a group of investors known as "Blitz." The companies separated soon thereafter, and under the accompanying deal, IFS issued Blitz a note for over $70 million.

In 2002, GMAC Mortgage Corporation filed an involuntary petition

2

against IFS in the Bankruptcy Court for the Southern District of Texas. W. Steve Smith was appointed the Chapter 7 Trustee in the resulting bankruptcy. With court approval, in 2003 Smith hired his own law firm to represent him as trustee, with Blanche Smith, his wife, as lead counsel. In 2005, Judge Isgur ordered that the case be jointly administered with multiple related cases. Smith initiated over 100 adversary proceedings to recover assets assertedly of the bankruptcy estates.

### 1. *Interamericas or "the 2005 Matter"*

In March 2005, Judge Isgur denied Smith's request to retain his firm as counsel for debtors related to IFS. Judge Isgur noted at the time that Smith was "considering facts that are inconsistent with his well-established duties to the estate" in his offered reason for hiring his firm:

> Trustee relies on his own firm to handle unprofitable cases. Thus, the Trustee reasons that in order to allow his firm to afford to prosecute the unprofitable cases, he must also hire his firm to handle profitable cases-such as the present case.

The order also noted it had "no question about the integrity or quality of work of Trustee Smith," but denied the application without prejudice. In May 2006, representing that he had sought to retain several other firms without success, Smith renewed his request for leave to hire his own firm on a contingency basis in the same matter. The court approved the request as part of a settlement between Smith and Blitz, the major creditor of IFS.

### 2. *"The 2009 Matter"*

In February 2009, Blitz filed a motion to convert the case to Chapter 11, which would have involved removing Smith as trustee. In May, Judge Isgur denied the motion and made verbal findings, including that Smith's firm was expected to advance certain litigation expenses, such that the estate did not "bear the risk of those expenses." He also found that Smith had engaged in

retaliatory litigation against Blitz. Judge Isgur declined to remove Smith as trustee, but noted that it was a "relatively close call" and that "the retaliation cause is a bigger reason for me" in favor of removal than those initially raised by Blitz.

Smith, as trustee, submitted a Motion for New Trial or to Alter or Amend a Certain Finding, arguing the court had erred in holding his firm rather than the estate responsible for advancing the expenses. The bankruptcy court denied the motion, and Smith, as trustee, appealed. In December 2009, the bankruptcy court approved a settlement disposing of the disputed expenses.

3. *"The CNC Matter"*

In November 2012, in an unrelated bankruptcy proceeding, Smith sought to hire his own firm. Judge Isgur required supplemental briefing either demonstrating that Smith had contacted other firms or explaining why he had not. Smith responded in part by hurriedly contacting firms by letter, providing the court with a copy.  The court was concerned that, among other factors, the letter's content and timing showed that Smith was trying to dissuade other firms so that his own could take the case.

The court issued an Order to Show Cause Why Trustee Should Not Be Removed, but ultimately determined that Smith should not be removed. In ruling, the court referenced the 2005/*Interamericas* matter and also stated that, rather than crediting Smith's explanation that the letter was simply inartful, it "believe[d] that the Trustee was attempting to benefit his own firm, to the detriment of the Estate." At the same time, testimony from one of the contacted firms indicated that Smith's firm had cooperated fully when it expressed interest in the litigation.  It persuaded the court that the evidence that the letter was intended to dissuade was not clear and convincing.

No. 14-20588

II

In one of the many adversary proceedings connected to the IFS bankruptcy, Smith won a large judgment for the estate. The judgment was appealed to the Fifth Circuit, which held oral argument on Tuesday, November 8, 2011. Both W. Steve and Blanche Smith were to argue.

The Smiths and their two six-year-olds traveled to New Orleans on the Saturday prior to oral argument. Neither W. Steve nor Blanche spent time preparing for oral argument on Saturday. On Sunday the 6th, Blanche spent 7.3 hours preparing and W. Steve spent 3 hours. On Monday the 7th, Blanche spent 4.10 hours and W. Steve spent 3 hours. Both Smiths attended oral argument on Tuesday the 8th, and did no further work on the case during the trip. They flew out of New Orleans on Wednesday the 9th.

While in New Orleans, the Smiths stayed at The Roosevelt for $359 a night. They ordered significant amounts of room service and ate at various restaurants. While their parents were preparing for oral argument, the children did homework, watched movies, and played video games in the same room. When he was not preparing for argument, Smith attended to the children, "set[] up the podium for [] oral argument," and tried "to walk off a bad back."

Smith requested reimbursement from his law firm for $3486.37 for the trip. This amount covered airport parking, taxis, $220 for meals, $900 for roundtrip airfare between Houston and New Orleans, a hotel bill of $1676.08, and $445.29 in "hotel charge." Smith did not ask for reimbursement for the children's food, movies, and airfare or for a significant proportion of the food he and his wife ordered. He also requested reimbursement for his and Ms. Smith's air tickets only for the coach price, rather than for the First Class tickets they actually used.

5

No. 14-20588

III

Smith later filed an "application for distribution authority" in the bankruptcy court asking that his firm be reimbursed from estate funds for $29,027.30. The sum was labeled "Expenses related to de la Pena, etc. before writ"—the matter he and Ms. Smith successfully defended in the Fifth Circuit—and was not broken down further. Smith testified that the lack of itemization was because he was focused on correctly applying the reimbursement "formula," which had been agreed on earlier.

Blitz, IFS's largest creditor, objected to the proposed distribution, and in response Smith provided an itemized list of expenses. The New Orleans trip expenses tracked his reimbursement request to his own firm, except that the hotel stay and "hotel charge" totals were combined into one $2121.37 charge "for hotel stay." The documentation listed the dates of the stay but mentioned only Smith, not Blanche or their children.

At the hearing on Blitz's objection, Smith explained he traveled to New Orleans ahead of time "to prepare," along with Ms. Smith, who would be delivering the argument. He did not mention the children. When asked if he could have prepared in Houston, he said he "[p]robably could have." The court found Smith should not charge the estate for the extended stay in New Orleans, and allowed $200 for hotel and $75 for meals for a one-day stay.

IV

The bankruptcy court then entered a *sua sponte* order to show cause why Smith should not be removed under 11 U.S.C. § 324(a). In its order, the court emphasized Smith's duty to act as a fiduciary of the estate "in dealing with his firm." The court described the Saturday to Wednesday trip to New Orleans and required "Smith to show cause why he should not be removed as trustee in this case for breaching his fiduciary duty by attempting to charge the Estate for an

extended stay in New Orleans, when no legitimate Estate purpose caused the additional Estate expenses for the extended stay." Immediately after that injunction, the court continued:

> On two prior occasions, the Court has questioned whether Smith has breached his fiduciary duty in dealings with his own law firms. *See In re Interamericas, Ltd.*, 321 B.R. 830 (Bankr. S.D. Tex. 2005) and *In re CNC Payroll, Inc.*, Case 12-33012, ECF #22 (Bankr. S.D. Tex. March 4, 2013). The Court is again concerned that Smith is placing his personal interests ahead of his fiduciary duties.

In response to the Show Cause order, Smith mentioned that his children had accompanied him and Ms. Smith on the trip because they "lacked child care options at home." He explained that he saw the appeal as complex and pivotal for the IFS estates; thus he decided to prepare away from office distractions. He argued he had claimed the expenses in good faith, but now saw he should not have charged the estate for the extra days spent in New Orleans preparing. Smith argued he should not be removed in the IFS case or, under § 324(b), in his many other cases.

At the hearing, Smith repeated and expanded on the reasons for the trip, and his later realization that he should have absorbed more of the cost. He explained that there was no one else to watch his two children, in part because his son has emotional issues which make him difficult to handle. He explained that he and Ms. Smith determined it was best for them to go to New Orleans where they could all be together in one room, instead of having the children running around the house and getting into trouble out of sight. Smith explained that although Ms. Smith was the primary appellate attorney, he had to attend oral argument as well in order to address fact-specific questions the court was likely to ask, with which he was more familiar.

On cross, Smith went through the expenses for the New Orleans stay in

detail.  He testified that so far in the life of the bankruptcy about $9 million had been paid out to the lawyers and other professionals, while Blitz, the largest creditor, had been paid only $5 million of an at least $70 million dollar claim.

Smith called former Texas Supreme Court justice Craig Enoch as an expert on preparation for oral argument. The court accepted Enoch as an expert and credited his testimony. Enoch testified that respected lawyers prepare for oral argument in very different ways, with some taking "three or four [or even five] days in a hotel room, depending on how serious they think the case is." Questioned by the court, Enoch differentiated between taking the time to prepare and charging the client for that time, and testified he would not have charged the estate for Saturday or Tuesday nights. Enoch also emphasized the importance of withdrawing from distraction in order to prepare.  On cross, he stated that having the children along could "present[] a problem" and that if childcare were available, it would be better not to have the children in the room, but was not prepared to say it was a poor choice to bring them in the circumstances facing the Smiths.

Blitz representative Jorge Hollander also testified that Blitz was dissatisfied with various aspects of Smith's handling of the IFS estates, and that the New Orleans trip was the "straw that broke the camel's back."

V

During the hearing, Smith's attorney first brought up the "2005/*Interamericas*" and "*CNC*" matters as relevant "recent events" and asked if Smith took his "fiduciary responsibilities seriously." Smith stated that his fiduciary responsibility had not been questioned "prior to the three instances before Judge Isgur." He then mentioned a 2009 settlement regarding how and when his firm and other professionals would be paid.  It appears that the

settlement Smith referred to is the one that ended the "2009 matter," but nobody mentioned the heart of that matter itself—that is, Smith's challenging a ruling favorable to the estate—until the Court brought it up:

> THE COURT: There's been some testimony about the settlement that was reached in December of 2009 based over the Court's May of 2009 findings. Those May of 2009 findings were that your firm was responsible for the payment of expenses.
>
> THE WITNESS: Right.
>
> THE COURT: When I was preparing for this hearing, that Order that mandated the -- not Order, those findings that said that your firm was to pay the expenses. What seemed to work fully for the benefit of the Estate and to the detriment of your firm. Right, it said Smith's firm is supposed to pay the expenses, not the Estate and the position taken in the hearing had been that the Estate should pay the expenses and not your firm. Why did you as Trustee seek reconsideration? Why did you as Trustee appeal an Order that appears to have benefitted the Estate even if it hurt your firm?

The court noted that the issue "was really bothering me last night" as it "was trying to look at whether [Smith was] able to treat [him]self as Trustee in [his] firm correctly." It added that it couldn't "for the life of me justify why the Trustee of the Estate would try to burden the Estate with expenses instead of his own firm." The court's concern was "how you sort out your personal interest from the Estate's interest . . . an age old question that is – comes to the forefront of what occurred in New Orleans."  The court also mentioned its prior finding that Smith had engaged in retaliatory litigation against Blitz after Blitz contested his fees.

During closing arguments, the court rejected Smith's position that he had not hidden his expenses, citing the initial failure to itemize, the amount of time it took Smith to provide the information once Blitz objected, and the continued lack of frankness about the children's presence. The court explained

that it saw Smith's earlier failures to put the estate first, including the 2009 matter, as "context to intent here because you're telling me there was no intent to do anything wrong."

Smith's attorney was not entirely familiar with the facts of the 2005/*Interamericas* matter. Regarding the 2009 matter, the problem was starker: "I'll be honest with you, Judge, I didn't know anything about it." "I couldn't begin to tell you if there's a better explanation or better facts that could be brought to light to try to explain what the basis of that was." The attorney later reiterated his lack of knowledge. The court responded:

> I'm not going to remove them over what might have happened in 2009, I'm worried about 2009 [as] context to what we're here about today. 2009 was not in my Show Cause order. 2009 was not in Blitz's joinder. 2009 is a fact --
>
> MR. HUGHES: Right.
>
> THE COURT: -- that provides information about whether the 2011 conduct was done with that same state of mind.

During Blitz's closing argument, its attorney, who was present during the 2009 matter, though representing a different creditor, stated that he was only now, as result of the court's questions, appreciating the angle that Smith had actually appealed an outcome favorable to the estate.

## VI

The bankruptcy court ruled that Smith should be removed from the IFS cases and, by operation of statute, all his other cases.  The court stated that "no reasonable fiduciary would accept a bill from its Counsel for the Saturday night or the Tuesday night's stays." "He intentionally charged the estate . . . for substantial expenses incurred for his personal benefit. He did not challenge those in his capacity as Trustee and that was a willful breach as his duty as a Trustee . . . ." The court stated that it did not credit Smith's testimony, due to

No. 14-20588

"putting it in context." "The history in this case shows that Smith was . . . willing to put the interest of his personal law firm ahead of the interest of the estate." The court then ran through the 2005/*Interamericas* and 2009 matters, indicating Smith had already had opportunities to "learn a lesson and not do this again." The court finally said that as there was no cause shown either for or against removal in Smith's other cases under §324(b), "the Statute takes effect."

Three days later on May 13th, the bankruptcy court entered an order stating in more detail its reasons for removing Smith. It discussed the 2005/*Interamericas* and 2009 matters as "background and an explanation of how Smith, as fiduciary, has previously administered the Estate's relationship with Smith's law firm." The court reasoned that in light of this "context" it was "forced to conclude that Smith intended that the [New Orleans] charges would not be scrutinized." The court concluded that the proper standard of proof for removal was whether there was "clear and convincing evidence that Smith had breached his fiduciary duty to the estate," and that this standard was met at least in part due to "[t]he history of this case," including the 2005/*Interamericas*, 2009, and *CNC* matters.

## VII

In May 2013, Smith moved the bankruptcy court to stay his removal as a whole, or alternatively, in the non-IFS cases. The court denied the motion, reasoning "it is too late to order the stay and the requested relief is moot" because "[t]he United States Trustee has already appointed new trustees in many (or perhaps all) of those cases. In reality, Smith seeks restoration of the status quo ante." The court alternatively addressed the merits of Smith's motion, finding that he presented "a serious legal question" regarding whether the court had properly considered his prior conduct in removing him. However,

No. 14-20588

the other factors weighed against a stay, and the court denied it.

Days later, Smith appealed the removal order and denial of stay, and filed an Emergency Motion for Stay in the district court. The district court denied his motion on the merits. In August 2014, the district court affirmed the removal order and denial of stay. Smith appeals (1) the district court's order affirming the bankruptcy court's removal and denial of stay, and (2) the district court's own denial of stay.

## VIII

This court "review[s] a district court's affirmance of a bankruptcy court decision by applying the same standard of review to the bankruptcy court decision" as the district court.[1] Findings of fact are reviewed for clear error, and legal questions are reviewed de novo.[2] The decision to remove a trustee is reviewed for abuse of discretion,[3] and abuse occurs when a bankruptcy court "(1) applies an improper legal standard or follows improper procedures in calculating the fee award, or (2) rests its decision on findings of fact that are clearly erroneous."[4]

We review the district court's decision to deny a stay pending appeal for abuse of discretion.[5] Smith and the U.S. Trustee agree that this standard also applies to review of the bankruptcy court's denial of stay.[6]

---

[1] *In re Martinez*, 564 F.3d 719, 725 (5th Cir. 2009).

[2] *Id.* at 726.

[3] *See In re AFI Holding, Inc.*, 530 F.3d 832, 844 (9th Cir. 2008).

[4] *In re Cahill*, 428 F.3d 536, 539 (5th Cir. 2005).

[5] *United States v. Transocean Deepwater Drilling, Inc.*, 537 F. App'x 358, 360 (5th Cir. 2013).

[6] Appellant's Br. 45; Appellee's Br. 52.

No. 14-20588

*1. Validity of Smith's removal*

Smith raises three issues on appeal. He first claims that the bankruptcy court abused its discretion in removing him, as did the district court in affirming the removal. Under section 324(a) of the Bankruptcy Code, the bankruptcy court may remove a trustee "for cause" and "after notice and a hearing."[7] Smith contends that he lacked adequate notice and that the court lacked sufficient cause to remove him. We reject both contentions.

*a. Notice*

Smith claims that he did not receive the notice and hearing due him prior to removal, rendering that removal an abuse of discretion. We disagree.

"[N]otice and a hearing" for purposes of the Bankruptcy Code is defined as "such notice . . . and such opportunity for a hearing as is appropriate in the particular circumstances."[8]  "Notice" eludes abstract definition, and we have not precisely defined what "notice" is required in removal proceedings. Notice must be specific enough to allow the parties to prepare and respond to the noticed issue.[9] And given the "extreme" nature of removal,[10] statutorily "appropriate" notice will ordinarily demand reasonably detailed notice of the conduct immediately at issue as well as the extrinsic conduct to be visited.[11]

It is undisputed that Smith had notice that he might be removed because of his conduct regarding the New Orleans trip expenses—that conduct was described in detail in the Show Cause order—and that he had a hearing.  Smith

---

[7] 11 U.S.C. § 324(a).

[8] 11 U.S.C. § 102(1)(A).

[9] *In re Brookover*, 259 B.R. 884, 891 (Bankr. N.D. Ohio 2001), *aff'd sub nom. Robiner v. Demczyk*, 269 B.R. 167 (N.D. Ohio 2001), *rev'd on other grounds*, 352 F.3d 1083 (6th Cir. 2003).

[10] *See, e.g., In re CNC Payroll, Inc.*, 491 B.R. 454, 460 (Bankr. S.D. Tex. 2013); *In re Tres-Ark, Inc.*, 483 B.R. 460, 467 (Bankr. W.D. Tex. 2012).

[11] *See In re Morgan*, 375 B.R. 838, 848-49 (Bankr. App. 8th Cir. 2007).

instead contests the bankruptcy court's consideration of "contextual matters."[12]    He objects that although the Show Cause order specifically mentioned the 2005/*Interamericas* matter and the *CNC* matter, it did not denote them as part of the "cause" for which Smith might be removed. Because of this, and because the bankruptcy court had previously approved settlements disposing of these matters, Smith argues that he lacked notice that the 2005/*Interamericas* matter and the *CNC* matter would be at issue in the show cause hearing. But the Show Cause order expressly invoked these matters as reasons to doubt Smith's fidelity to the estate, which should have alerted him as to their likely importance to the impending hearing. Indeed, Smith himself first brought up the 2005 and *CNC* matters at the hearing, without suggestion that he was unprepared to address them. Any claim he may have had as to the 2005/*Interamericas* and *CNC* matters is therefore waived.[13] Regardless, the notice here was sufficient.

Smith's case is stronger with regard to the 2009 matter, which was not mentioned in the Show Cause order. Indeed, the bankruptcy court explicitly recognized that removing Smith over the 2009 matter might be problematic because of lack of notice, and declared that it would not do so; it would only use it as "information about whether the [New Orleans] conduct was done with that same state of mind." Though there was no formal objection at the hearing,

---

[12] The U.S. Trustee suggests that the court's use of these matters does not implicate Smith's procedural rights because Judge Isgur "did not base its decision to remove Smith on [them]. Smith was removed because of his actions in the IFS case regarding the expenses related to the New Orleans trip." Appellee's Br. at 40. But whether the prior matters were styled as "context" or as part of the foundation of the removal, the fact remains that Judge Isgur extensively relied on them in his decision to remove Smith.

[13] *See In re Galaz*, 480 F. App'x 790, 792 (5th Cir. 2012) ("Neither this court nor a district court will review an issue presented for the first time on appeal of a bankruptcy court's decision."); *Newby v. Enron Corp. (In re Newby)*, 394 F.3d 296, 309 (5th Cir. 2004).

No. 14-20588

the bankruptcy court was arguably made aware that basing its ruling on the 2009 matter might not comport with the process required by statute.[14]

However, even if Smith did not waive his notice claim as to the 2009 matter, the claim fails on the merits. The Show Cause order alerted Smith that his observance of fiduciary duties generally, including in past cases, would be at issue. For this reason, he might reasonably have expected an inquiry into the 2009 matter, in which the bankruptcy court had specifically criticized his conduct and nearly removed him.　Moreover, Smith repeatedly invoked his entire track record in his briefing before the hearing, representing that he had virtually unerringly adhered to his fiduciary obligations in the IFS litigation and other cases.[15] He made similar statements under examination by his own lawyer at the hearing.[16] Because he emphasized his record so sweepingly, Smith should have expected that the bankruptcy court might probe it in greater detail, and might range beyond the 2005/*Interamericas* and *CNC*

---

[14] *See, e.g., United States v. Neal*, 578 F.3d 270, 272 (5th Cir. 2009) ("[A]n objection must be sufficiently specific to alert the district court to the nature of the alleged error and to provide an opportunity for correction.").

[15] *See, e.g.,* Trustee's Response to Show Cause Order, ECF No. 15-2, at 2 ("The Trustee has been a panel trustee in the district since 1979. He . . . has faithfully discharged his duty as a trustee in literally tens of thousands of cases."), 13 ("[H]is extensive files reflect a ten-year commitment . . . to successfully prosecute complex estate litigation assets in a responsible manner."), 16 ("[T]he Trustee has a substantial and longstanding record of excellence in performing his duties. . . . He has never been sanctioned as a trustee, and his service has been regarded by this Court in other contexts and other courts in this district as commendable.").

[16] *See* Show Cause Hearing Tr. 31, ECF No. 15-10 ("I take my fiduciary responsibility and duty very seriously. I have done so for 34—35 years. I've never stolen from an estate. There's never been any question prior to the three instances before Judge Isgur or [sic] any of my actions were called into question."). This comment, in particular, may have "opened the door" to questioning on the 2009 matter. Assuming that the "three instances" cited were the New Orleans trip and the 2005/*Interamericas* and *CNC* matters cited in the Show Cause order, Smith elided the 2009 matter – in which Judge Isgur had strongly criticized his conduct – and invited a rebuttal.

matters specifically mentioned in the Show Cause order.[17] Smith therefore had a meaningful opportunity to prepare to defend his record, regardless of whether one of the particular issues ultimately explored had been flagged in the Show Cause order.

In any event, even if the bankruptcy court erred in using the 2009 matter as "context," we are satisfied that the error was harmless. The 2009 matter was one of several contextual episodes the court considered in reaching its decision. Smith gave detailed answers to the few questions during the hearing concerning the 2009 matter, and he has not shown what he would have done differently given more specific notice. His notice argument fails.

### b. Cause

The bankruptcy court considered undisputed evidence that Smith charged the estate over $3,000 for the New Orleans trip, that he failed to itemize in his distribution request, and that he provided the necessary detail only days before the hearing on Blitz's objections. At the hearing on the objections, he was not forthcoming with the fact that his children accompanied him and his wife on the New Orleans trip. The court did not credit Smith's testimony, and did credit that of his expert, who testified that he would not have charged the estate for at least two of the nights in New Orleans. In addition, the 2005/*Interamericas* and *CNC* matters showed that Smith was on notice that he needed to scrupulously observe his fiduciary duties, and the 2009 matter at the least supported the drawn inference of occasional insensitivity to fiduciary duty.

In light of these facts, the bankruptcy court found that Smith "willfully

---

[17] The court did not end up ranging particularly far in addressing the 2009 matter, since that matter also played out within the context of the IFS bankruptcy.

breached his fiduciary duty to the Estate" and that "Smith intended that the charges would not be scrutinized." The court also concluded that no reasonable person, or fiduciary, would allow charges against the estate for at least two of the nights in New Orleans. The court ruled that these findings amounted to clear and convincing evidence of "cause" and justified Smith's removal. We cannot conclude that the bankruptcy court thereby abused its discretion, or that the district court clearly erred in affirming the ruling.

Smith disputes the factual findings that underpin the bankruptcy court's determination of "cause," focusing his attack on the three "contextual" matters cited by the bankruptcy court. He understandably accents the fact that the 2005/*Interamericas* and 2009 matters were eventually resolved by court-approved settlements. Yet this misses the point, as both of the able judges below made clear. The settlements disposed of various issues, but did not erase the bankruptcy court's concerns and warnings regarding Smith's dealings with his firms in the lead-up to both of these incidents. As to the *CNC* matter, Smith argues that because the bankruptcy court did not find clear and convincing evidence of cause to remove him in *CNC*, it could not depend on the *CNC* show cause proceeding to support its decision to remove him weeks later in this case. But the court stated in its *CNC* order that it believed Smith "was attempting to benefit his own firm, to the detriment of the Estate."[18] The *CNC* matter was only part of the background evidence that the court considered in determining that the clear and convincing standard *had* been met in the *present* case. It was not clear error for the bankruptcy court to use the *CNC* matter in this way.

Smith further argues that a simple breach of fiduciary duty, without something more, is legally insufficient "cause" for removal under section

---

[18] *In re CNC Payroll, Inc.*, 491 B.R. 454, 463 (Bankr. S.D. Tex. 2013).

324(a). "Cause" under section 324(a) is not defined in the Bankruptcy Code or in our precedent. However, undefined terms in the Bankruptcy Code are to be given their ordinary meaning.[19] We have also noted that the phrase "for cause" in two *other* Bankruptcy Code provisions is "not defined in the statute so as to afford flexibility to the bankruptcy courts."[20]

Smith urges us to limit this flexibility when it comes to 324(a).   First, analogizing from the standard for holding a trustee personally liable for breaches of fiduciary duty, he suggests that cause for removal should not be found unless a "gross negligence" standard is met.[21]  He points to no court that has so held.  Importantly, while "the Bankruptcy Code is silent on the standard of care required of a trustee performing [his] duties and on what is to be done if the trustee breaches that standard of care,"[22] it is not silent on the standard for removal—"cause."  It is far from clear to our eyes that the gross negligence standard ought to be imported.

Smith also urges that a trustee should not be removed absent "actual injury or fraud."[23]  We note that various bankruptcy and district courts have so held,[24] following the Second Circuit's statement in a conflict of interest case

---

[19] *Ransom v. FIA Card Services, N.A.*, 562 U.S. 61, 69 (2011).

[20] *Matter of Little Creek Dev. Co.*, 779 F.2d 1068, 1072 (5th Cir. 1986); *see also In re AFI Holding, Inc.*, 530 F.3d 832, 852 (9th Cir. 2008) ("Cause for removal of an appointed panel trustee under § 324(a) is not susceptible to sharp definition, but is determined on a case-by-case, totality-of-circumstances approach, subject to the bankruptcy court's broad discretion.")

[21] Appellant's Br. 26 (citing *In re Smyth*, 207 F.3d 758, 762 (5th Cir. 2000)).

[22] *Smyth*, 207 F.3d at 761.

[23] Appellant's Br. 33 (quoting *In re Sheehan*, 185 B.R. 819, 824 (D. Ariz. 1995)).

[24] *See, e.g.*, *In re Nettles*, 354 B.R. 90, 93 (Bankr. D.S.C. 2006) (so holding, "in general"); *Sheehan*, 185 B.R. at 824; *In re Cee Jay Discount Stores, Inc.*, 171 B.R. 173, 175 (Bankr. E.D.N.Y. 1994); *In re Lundborg*, 110 B.R. 106, 108 (Bankr. D. Conn. 1990) (so holding, "in general"); *In re Acadiana Elec. Serv., Inc.*, 66 B.R. 164, 165 (Bankr. W.D. La. 1986) (requiring "fraud or actual injury . . . or [that] the estate will suffer more from the discord created by

that "[g]rounds for disapproval or removal of a trustee in bankruptcy are not to be found in his formal relationships. We have traditionally stressed the elements of fraud and actual injury to the debtor interests . . ."[25] In contrast, the Third Circuit correctly identified the "actual injury or fraud" requirement as being tied to conflict of interest situations,[26] and in any case rejected it in favor of a "middle-ground" approach, which asks whether there is "a sufficient threat of material adversity."[27] The Ninth Circuit has followed suit.[28]

Without adopting a general interpretation of the term "cause" under section 324(a), we are persuaded that Smith's conduct, as determined by the bankruptcy court, justified removal regardless of whether it entailed gross negligence or "actual injury or fraud." In prior cases, trustees have been removed for giving false testimony,[29] for "solicit[ing] [estate] funds" in misleading ways "intended to avoid the rules and procedures regarding payments of funds to trustees,"[30] and for the "appearance of impropriety or a potential conflict of interest,"[31] to cite a few examples. As in these cases, Smith's conduct was found to be a "violation of the trustee's fiduciary duties,

---

retaining the present trustee" than from removal); *In re Hartley*, 50 B.R. 852, 859 (Bankr. N.D. Ohio 1985).

[25] *In re Freeport Italian Bakery, Inc.*, 340 F.2d 50, 54 (2d Cir. 1965) (internal quotation marks omitted).

[26] *In re BH & P , Inc.*, 949 F.2d 1300, 1311 (3d Cir. 1991) ("A majority of courts evaluating an alleged conflict of interest has adhered to the principle that before a trustee may be removed, some actual injury must be shown.").

[27] *Id.* at 1312 (quoting *In re Martin*, 817 F.2d 175, 182 (1st Cir. 1987)).

[28] *In re AFI Holding, Inc.*, 530 F.3d 832, 838 (9th Cir. 2008). A third approach to conflict of interest removal cases is automatic removal when a trustee is not "disinterested" under § 101(14)(A)-(D). *See id.* at 846-48 (surveying three approaches to conflict of interest cases).

[29] *In re Morgan*, 573 F.3d 615, 627-28 (8th Cir. 2009).

[30] *In re Vega*, 102 B.R. 552, 553 (Bankr. N.D. Tex. 1989).

[31] *AFI Holding, Inc.*, 530 F.3d at 850.

misconduct or failure to perform the trustee's duties."[32]  It was expressly found *not* to be a "mistake[] in judgment . . . reasonable under the circumstances."[33]  To the extent that the best interests of the estate must be considered, the bankruptcy court did so, stating that "[t]he court, and parties in interest, must not be called upon to examine each action taken by a trustee . . . . [They] should have confidence that a trustee will never intentionally breach a fiduciary obligation."[34]  The court further stated that "Smith has consistently acted to advance his law firm's interests to the detriment of the Estate." These findings situate Smith's conduct firmly within the legally acceptable "cause" prior cases have identified for removing a trustee.

The bankruptcy court applied a proper legal standard, and its determination that Smith's conduct violated that standard was not clearly erroneous. We conclude that the bankruptcy court did not abuse its discretion in finding cause sufficient to remove Smith as trustee.

*2. Constitutionality of section § 324(b)*

Smith claims that section 324(b) of the Bankruptcy Code, under which he was removed as trustee in each of his other pending cases, is unconstitutional—both facially and as applied. Again, we disagree.

*a. § 324(b) is not facially unconstitutional*

Smith argues that § 324(b) is unconstitutional on its face because it "allows the decision in one case to disrupt the administration of every other

---

[32] *AFI Holding, Inc.*, 530 F.3d at 845 (quoting 3 *Collier on Bankruptcy* ¶ 324, 02, at 324-3 to 324-4 (Alan N. Resnick & Henry J. Sommer eds., 15th ed. rev. 2006)).

[33] *In re Miller*, 302 B.R. 705, 709 (Bankr. App. 10th Cir. 2003).

[34] *See, e.g, In re Tres-Ark, Inc.*, 483 B.R. 460, 470 (Bankr. W.D. Tex. 2012) ("[R]emoval is only appropriate if it would improve administration of the estate."); *In re Sheehan*, 185 B.R. 819, 824 (D. Ariz. 1995) ("Courts must also consider the best interest of the estate . . . .").

bankruptcy to which a trustee has been assigned, irrespective of the wishes of—and more importantly, *without notice to*—the court actually presiding over that case or the parties who have an interest in its outcome,"[35] depriving them of due process.  The district court dismissed this concern because all of Smith's cases were in the Southern District of Texas and thus no other court—as distinct from another judge—was affected. Smith argues in response that because the language of § 324(b) *allows* for removal in cases that are before different courts, it is facially invalid.[36]

This turns the facial constitutionality inquiry on its head, by urging that if there is some set of circumstances where the law would be unconstitutional, it is facially unconstitutional.  Instead, "[t]o succeed in a typical facial attack, [Smith] would have to establish that no set of circumstances exists under which [§ 324(b)] would be valid, or that the statute lacks any plainly legitimate sweep."[37]  Smith makes no attempt to show how the constitutional rights of creditors or debtors are violated by operation of § 324(b).  He merely cites a single bankruptcy court opinion for the proposition that the "Bankruptcy Code grants numerous rights to creditors . . . [including] to vote in the election of the trustee"[38] and invokes due process.

In any event, Smith "must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties."[39] Smith's argument here is expressly premised not on his own rights or those of

---

[35] Appellant's Br. 41.

[36] Appellant's Br. 42-43.

[37] *United States v. Stevens*, 559 U.S. 460, 472 (2010) (internal citations and quotation marks omitted); *see McKinley v. Abbott*, 643 F.3d 403, 408 (5th Cir. 2011) (applying standard in *Stevens*).

[38] Appellant's Br. 43 (quoting *In re Ricks*, 253 B.R. 734, 739 (Bankr. M.D. La. 2000)).

[39] *Warth v. Seldin*, 422 U.S. 490, 499 (1975).

trustees in general, but on those of debtors, creditors and other courts. For these reasons, Smith's facial attack on § 324(b) fails.

### b. *§ 324(b) is not unconstitutional as applied*

Smith argues that he had protected liberty and property interests in his continued employment as trustee in the hundreds of non-IFS cases from which he was removed by operation of § 324(b). As such, in addition to his arguments that notice was insufficient and removal from the IFS proceedings an abuse of discretion under § 324(a), he argues he was denied procedural due process as to his automatic removal from other cases under the statute.

This attack does not appear to have been made in the bankruptcy court, and thus is likely waived. In any case, Smith's as-applied attack on § 324(b) collapses into his general argument that he lacked proper notice. Assuming without deciding that Smith had cognizable interests in his continued employment in non-IFS cases, such interests are relevant here only as "triggers" of constitutionally secured procedural rights to notice and a hearing[40]—rights the removal statute itself confirmed that he has. He in fact received notice and a hearing, and does not dispute that he was on notice that he could be removed in *all* of his cases—nor could he, as he explicitly argued in his Response to Show Cause order that if he was removed in the IFS cases, he should not be removed in his other cases under § 324(b).

As such, nothing is left of this attack on § 324(b) except the already disposed-of contention that the notice provided was inadequate. We reject Smith's notice argument as well as his as-applied constitutional argument as to § 324(b).

---

[40] *See* Appellant's Br. 43-44 (citing *Johnson v. Outboard Marine Corp.*, 172 F.3d 531, 537 (8th Cir. 1999) and *Wright v. Keokuk Cnty. Health Ctr.*, 399 F. Supp. 2d 938, 959-61 (S.D. Iowa 2005), both of which establish only the right to notice and a hearing).

No. 14-20588

*3. Denial of stay pending appeal*

Finally, Smith claims that the bankruptcy and district courts wrongly refused to stay his removal pending appeal. Those courts correctly recognized, however, that the issue was moot. Smith has already been removed and replaced in all of his cases. A stay would have no effect, and our ruling today moots the issue in any event.

IX

The district courts and in turn the bankruptcy courts are the keepers of the temple. These courts rely on the bar to abide by its strict rules and norms of conduct. Bankruptcy practice presents many tasks attended and girded by strict identity of duty and diligence by its officers. The courts below were only minding their role: not to end, but to redirect a distinguished presence at the bar, and to give sustenance to necessarily demanding norms of practice. That this is expected does not diminish its importance. We AFFIRM the district court.