**NOT FOR PUBLICATION**

# UNITED STATES BANKRUPTCY APPELLATE PANEL
## OF THE NINTH CIRCUIT

|  |  |
|---|---|
| In re:<br>LI'S CAPITAL LLC,<br><div align="right">Debtor.</div> | BAP No. NC-24-1096-FBC<br><br>Bk. No. 18-30918-dm |
| E. LYNN SCHOENMANN,<br><div align="right">Appellant,</div><br>v.<br>UNITED STATES TRUSTEE,<br><div align="right">Appellee.</div> | **MEMORANDUM**[*] |

Appeal from the United States Bankruptcy Court
for the Northern District of California
Dennis Montali, Bankruptcy Judge, Presiding

Before: FARIS, BRAND, and CORBIT, Bankruptcy Judges.

## INTRODUCTION

Appellant E. Lynn Schoenmann appeals from the bankruptcy court's

order removing her as chapter 7[1] trustee for personal misconduct unrelated

---

[*] This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have, *see* Fed. R. App. P. 32.1, it has no precedential value, *see* 9th Cir. BAP Rule 8024-1.

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532.

to her duties as trustee. We AFFIRM.

## FACTS

### A.    Probate litigation

Ms. Schoenmann has been a chapter 7 panel trustee since 1997.

A few years prior to her appointment as panel trustee, she married Donn Schoenmann. At that time, Mr. Schoenmann was financially successful. He fell ill soon thereafter, and his mental and physical health and his financial condition gradually deteriorated.

In 2016, Mr. Schoenmann executed new estate planning documents and deeds that terminated Ms. Schoenmann's right of survivorship in four pieces of real estate. But later that same year, Mr. and Ms. Schoenmann signed a Post Marital Agreement (the "PMA") that (among other things) restored Ms. Schoenmann's right of survivorship in three of the properties.

Mr. Schoenmann died in 2018. His passing meant that, by virtue of the right of survivorship restored in the PMA, Ms. Schoenmann became the owner of the real estate.

Ms. Schoenmann instituted probate proceedings in California superior court and became executor of the probate estate. Mr. Schoenmann's children by a prior marriage (the "Heirs") actively litigated the probate case.

First, the Heirs sought a preliminary injunction restraining Ms. Schoenmann from transferring one of the real estate interests. The superior court granted the preliminary injunction, finding that there was a

strong likelihood that the Heirs could show that the transfer of the real estate was a fraudulent transfer.

Second, the Heirs filed a petition to invalidate the PMA. They argued that Ms. Schoenmann induced Mr. Schoenmann to sign the PMA by taking advantage of his physical and mental frailty and that the PMA was contrary to his true intentions. Ms. Schoenmann argued that the PMA was the product of extensive negotiations in which Mr. Schoenmann was represented by counsel and that its terms were consistent with his intent. The stakes were high: if the Heirs were successful, Ms. Schoenmann's right of survivorship in the real estate (and her ownership upon Mr. Schoenmann's death) would be invalidated.

The parties agreed to a bifurcated trial, the first phase of which would decide the validity of the PMA. After a ten-day bench trial, the superior court issued a detailed and comprehensive tentative decision and proposed statement of decision (the "Tentative Decision").[2] The court laid out a harrowing tale of Ms. Schoenmann's abuse, intimidation, and manipulation of Mr. Schoenmann while he was in desperate mental, emotional, and physical condition. The court indicated its intention to decide that Mr. Schoenmann was an abused spouse, that the PMA unfairly benefitted Ms. Schoenmann, that Ms. Schoenmann used undue influence to induce Mr. Schoenmann to sign the PMA, and that the PMA was invalid.

---

[2] In a bench trial on factual questions, the court must make a tentative decision, which is neither a judgment nor binding. Cal. R. of Ct. 3.1590(a), (b).

The superior court allowed the parties to file objections to the Tentative Decision within fifteen days after its issuance.[3]

## B.      The EIDL Loan

In the meantime, about three weeks before the probate trial was set to begin, Ms. Schoenmann applied for a COVID-19 Economic Injury Disaster Loan (the "EIDL Loan") from the U.S. Small Business Administration. In her application, Ms. Schoenmann listed all four of the real properties as potential collateral for the loan and stated that she was the sole owner of each property. She did not disclose the pending probate proceedings challenging her ownership of the properties and threatening her with significant monetary liability. She also did not disclose the attorneys' fees that she had incurred but that had not yet been billed.

Ms. Schoenmann obtained approval for an EIDL Loan of $924,700. Four days before the trial in superior court, she signed a loan agreement in which she said that she owned the four parcels of real estate, that her title had never been "disputed or questioned," and that the properties were free of claims by third parties. She promised to use the loan proceeds "solely as working capital to alleviate economic injury caused by disaster occurring in the month of January 31, 2020 and continuing thereafter."

Eventually, she used about half of the EIDL Loan proceeds to pay her attorneys. She allegedly used the remaining funds on personal expenses,

---

[3] The parties may file objections to a proposed statement of decision and judgment within fifteen days of service. Cal. R. of Ct. 3.1590(g).

4

such as automobile payments, travel expenses, and cash withdrawals.

## C.    Ms. Schoenmann's bankruptcy case

In January 2022, before the time to object to the Tentative Decision expired, Ms. Schoenmann filed a chapter 11 petition. The automatic stay prevented the superior court from issuing a final decision.

When she filed her chapter 11 petition, Ms. Schoenmann voluntarily requested suspension from assignment as chapter 7 trustee in future cases for 120 days. She subsequently agreed to multiple extensions of the suspension.

The Heirs moved the bankruptcy court to lift the automatic stay so the superior court could enter a final decision. Ms. Schoenmann objected. Instead, she agreed that she "would live with the tentative decision as the result" and maintained that the only issue before the superior court was the PMA, "which the probate court voided and we accept, for the purposes of everything going forward, that the probate court has voided it." At a later hearing, Ms. Schoenmann argued that she did not agree to accept the superior court's findings unrelated to the validity of the PMA and that the Tentative Decision was not binding on the bankruptcy court.

The Heirs also filed adversary proceedings challenging the dischargeability of Ms. Schoenmann's debt to the probate estate and seeking recovery of assets that allegedly belonged to the probate estate. Ms. Schoenmann filed adversary proceedings against the Heirs seeking to quiet her title to the four properties and for a declaration that the Heirs had

5

no claim to her profit-sharing plan.

Ms. Schoenmann and the Heirs settled most of their dispute in March 2023. The chapter 11 case was converted to chapter 7 in September 2023, and some (but not all) of the adversary proceedings that the Heirs and Ms. Schoenmann had filed against each other were dismissed.[4]

The quiet title adversary proceeding was not among the dismissed cases. The bankruptcy court granted summary judgment in favor of the Heirs based on the preclusive effect of the Tentative Decision. On appeal, the district court affirmed, holding (among other things) that Ms. Schoenmann had not challenged the finality of the Tentative Decision in the bankruptcy court and could not raise that argument for the first time on appeal. *Schoenmann v. Schoenmann*, Case No. 22-cv-09156-AMO, 2024 WL 4227587 (N.D. Cal. Sept. 17, 2024). Ms. Schoenmann's appeal to the Ninth Circuit is pending.

## D.    The removal proceedings

In November 2023, the U.S. Trustee filed a motion to remove Ms. Schoenmann as trustee ("Motion to Remove") in this case and all other cases in which she was serving as trustee. The U.S. Trustee argued that the misconduct described in the Tentative Decision, her misstatements made in connection with the EIDL Loan, and her misuse of those funds were "cause" for removal under § 324(a).

---

[4] Ms. Schoenmann received her chapter 7 discharge on April 18, 2024. The case remains open.

Ms. Schoenmann vigorously opposed the Motion to Remove. She largely argued that the allegations about her actions concerning her husband and the EIDL loan were false and in any event did not amount to "cause" for her removal. Additionally, she argued that the Tentative Decision was not entitled to issue preclusive effect.

Prior to the hearing on the Motion to Remove, Ms. Schoenmann resigned from the chapter 7 trustee panel. The U.S. Trustee accepted her resignation and decided that its administrative review of "her eligibility to receive future case assignments" was moot. However, the U.S. Trustee asserted that her resignation did not moot the Motion to Remove.

After two hearings,[5] the court entered a detailed decision granting the Motion to Remove and removed Ms. Schoenmann as trustee in all pending cases with a few exceptions. (No one challenges the court's decision to leave Ms. Schoenmann in office in the excepted cases.) In summary, the court held that (1) personal misconduct unrelated to a specific bankruptcy case can be "cause" for removal, (2) the Tentative Decision has preclusive effect, and Ms. Schoenmann had agreed to be bound by it, (3) the state court's preliminary injunction has preclusive effect, (4) the court's own partial summary judgments in the adversary proceedings also had preclusive effect, (5) the facts found in the Tentative

---

[5] After the first hearing on the Motion to Remove, Ms. Schoenmann voluntarily resigned from most of her cases and requested court assistance in implementing the resignations. After the second hearing, she resigned from additional cases, including *Li's Capital*.

Decision and the preliminary injunction amounted to "cause," (6) Ms. Schoenmann's improper conduct regarding the EIDL Loan amounted to "cause," and (7) Ms. Schoenmann's resignation did not moot the issue of her removal.

Ms. Schoenmann timely appealed.

## JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(A). We have jurisdiction under 28 U.S.C. § 158.

## ISSUE

Whether the bankruptcy court erred when it removed Ms. Schoenmann as chapter 7 trustee for "cause" under § 324.

## STANDARDS OF REVIEW

We review a bankruptcy court's decision to remove a trustee under § 324 for an abuse of discretion. *Dye v. Brown (In re AFI Holding, Inc.)*, 530 F.3d 832, 844 (9th Cir. 2008) (adopting in total this Panel's decision and holding that "[r]emoval of a trustee under § 324 is left to the sound discretion of the bankruptcy court").

"We . . . review de novo the bankruptcy court's determination that issue preclusion is available. If we conclude that issue preclusion is available, we review for abuse of discretion the bankruptcy court's decision giving issue preclusive effect to the state court's decisions." *Black v. Bonnie Springs Family Ltd. P'ship (In re Black)*, 487 B.R. 202, 210 (9th Cir. BAP 2013) (citation omitted).

To determine whether the bankruptcy court has abused its discretion, we conduct a two-step inquiry: (1) we review de novo whether the bankruptcy court "identified the correct legal rule to apply to the relief requested" and (2) if it did, we consider whether the bankruptcy court's application of the legal standard was illogical, implausible, or without support in inferences that may be drawn from the facts in the record. *United States v. Hinkson*, 585 F.3d 1247, 1262-63 (9th Cir. 2009) (en banc).

"De novo review requires that we consider a matter anew, as if no decision had been made previously." *Francis v. Wallace (In re Francis)*, 505 B.R. 914, 917 (9th Cir. BAP 2014).

## DISCUSSION

**A.  Personal misconduct unrelated to a specific trustee assignment can amount to "cause" for removal under § 324(a).**

Ms. Schoenmann argues that the bankruptcy court erred when it decided that conduct unrelated to her work as a trustee could amount to cause for removal. We disagree.

Section 324(a) provides that "[t]he court, after notice and a hearing, may remove a trustee . . . for cause." Ms. Schoenmann's argument hinges on the meaning of "cause."

"Our analysis begins with the statutory language . . . . If that language is plain, our analysis also ends there." *Mission Hen LLC v. Lee (In re Lee)*, 655 B.R. 340, 349 (9th Cir. BAP 2023) *(citing Lamie v. U.S. Tr.*, 540 U.S. 526, 534 (2004) ("It is well established that when the statute's language

is plain, the sole function of the courts—at least where the disposition required by the text is not absurd—is to enforce it according to its terms." (cleaned up)); *Smallwood v. Allied Van Lines, Inc.*, 660 F.3d 1115, 1121 (9th Cir. 2011) ("Our analysis begins, as it must, with the text of the statute in question. Under the 'plain meaning' rule, where the language of a statute is plain and admits of no more than one meaning the duty of interpretation does not arise, and the rules which are to aid doubtful meanings need no discussion." (cleaned up))).

"Cause" is an expansive and sweeping word. The Ninth Circuit has observed that "[c]ause for removal of an appointed panel trustee under § 324(a) is not susceptible to sharp definition, but is determined on a case-by-case, totality-of-circumstances approach, subject to the bankruptcy court's broad discretion." *In re AFI Holding, Inc.*, 530 F.3d at 852; *cf. Smith v. Robbins (In re IFS Fin. Corp.)*, 803 F.3d 195, 206 (5th Cir. 2015) (considering "cause" under § 324(a) and noting that "the phrase 'for cause' in two *other* Bankruptcy Code provisions is 'not defined in the statute so as to afford flexibility to the bankruptcy courts'" (citation omitted)). In *AFI Holding*, the Ninth Circuit adopted this Panel's decision, in which we stated that "[i]t is well established that 'cause' may include trustee incompetence, violation of the trustee's fiduciary duties, misconduct or failure to perform the trustee's duties, or lack of disinterestedness or holding an interest adverse to the estate. . . . This listing is illustrative, but not exhaustive." 530 F.3d at 845 (citations omitted).

According to Ms. Schoenmann, "cause" must be something related to the trustee's work in one or more bankruptcy cases. But Congress used only the broad word "cause," with no qualifications or adornment. If Congress intended Ms. Schoenmann's meaning, it would have used a narrower word or phrase. *Cf. Avendano-Ramirez v. Ashcroft*, 365 F.3d 813, 818 (9th Cir. 2004) ("[W]e must presume that Congress said what it meant and meant what it said."); *Stehrenberger v. Stehrenberger (In re Stehrenberger)*, 665 B.R. 402, 415 (9th Cir. 2024) ("We presume that Congress acted intentionally and intended the plain meaning of the statute.").

Ms. Schoenmann correctly points out that nearly all of the published and available unpublished decisions removing trustees rely on misconduct related to the performance of the trustee's duties in bankruptcy cases. But Ms. Schoenmann cites no case, and we have found no case, refusing to remove a trustee for personal misconduct. Indeed, the authoritative Collier treatise says that, "[u]nder the Bankruptcy Code, causes for removal have included situations in which . . . the trustee was guilty of misconduct in office or personal misconduct." 3 Collier on Bankruptcy ¶ 324.02 (Richard Levin & Henry J. Sommer eds., 16th ed.). One court removed a chapter 13 trustee who sexually harassed his employees. *In re Chapter 13, Pending & Future Cases*, 19 B.R. 713, 717 (Bankr. W.D. Wash. 1982) (initially finding that the trustee had efficiently and honestly performed his official duties as a chapter 13 trustee and denying the motion to remove, but on a motion for reconsideration, holding that the federal and state policy against sexual

11

harassment warranted removal of the trustee). Although the trustee's misconduct in that case literally happened in his office, it had nothing to do with his administration of bankruptcy cases.

Ms. Schoenmann's narrow definition of "cause" would hamstring the bankruptcy court. If a trustee engages in misconduct that calls into question his or her integrity and trustworthiness or that, if repeated in a bankruptcy case, could harm the interests of the estate and its creditors, the court should be free to take preemptive action.

We therefore hold that "cause" under § 324(a) is not limited to misconduct in the performance of a trustee's duties as such.

## B. The bankruptcy court's findings regarding the EIDL Loan were not clearly erroneous.

The bankruptcy court did not err in holding that Ms. Schoenmann's actions concerning the EIDL Loan qualified as personal misconduct warranting removal under § 324(a).

The bankruptcy court found that Ms. Schoenmann "acted improperly in seeking, obtaining and then dealing with or retaining the proceeds" of the EIDL Loan. The court found that she did not disclose the then-pending probate litigation, even though the application form asked her to disclose "contingent liabilities," "legal claims," and "other liabilities." The court did not believe her assertion that she found the instructions confusing. It also found that the loan agreement for the EIDL Loan permitted her to use the loan proceeds only for "working capital," that the legal fees she incurred in

12

the probate litigation and the bankruptcy case had nothing to do with her trustee practice, and that payment of those fees was not a proper use of the funds for working capital purposes. Finally, the court noted that it had permitted her to use the loan proceeds only in a manner "consistent with the use restrictions contained in the EIDL loan documents." Therefore, her misuse of the loan proceeds was also a violation of the court's order.

Ms. Schoenmann argues strenuously that these findings were wrong. She claims that she did not knowingly omit the pending probate proceedings from the loan application (because the application was "patently ambiguous") and did not knowingly misuse the loan proceeds (because the restrictions on use of the loan proceeds were "ambiguous" and "undefined"). But the bankruptcy court's findings are supported by evidence in the record, and Ms. Schoenmann does not argue on appeal that the court should have held an evidentiary hearing.

Furthermore, Ms. Schoenmann essentially ignores the portion of the loan agreement stating that the proceeds were for use "solely as working capital to alleviate economic injury caused by disaster occurring in the month of January 31, 2020 and continuing thereafter." She only claims that that phrase "is not informative" and that she was "left to guess." There is no evidence that the COVID-19 pandemic had anything to do with the attorneys' fees that Ms. Schoenmann incurred in the probate proceedings or her personal bankruptcy case. Rather, she claims on appeal that she determined that the loan proceeds could be used "as 'working capital' to

13

pay part of her legal and accounting fees in an amount proportionate to the damage and threat to the viability of her Chapter 7 business" and as payroll and to cover other ongoing business expenses. The bankruptcy court did not err in discounting her explanation. We find no clear error in the court's factual findings.[6] Those findings were independently sufficient to support the conclusion that cause existed to remove Ms. Schoenmann as a chapter 7 trustee.

## C. The bankruptcy court erred in affording prior rulings issue preclusive effect.

The bankruptcy court gave preclusive effect to the superior court's Tentative Decision and preliminary injunction and to its own partial summary judgment. This was error.

State law determines the preclusive effect of a judgment. *See Plyam v. Precision Dev., LLC (In re Plyam)*, 530 B.R. 456, 462 (9th Cir. BAP 2015) ("A bankruptcy court may rely on the issue preclusive effect of an existing state court judgment as the basis for granting summary judgment. . . . In so doing, the bankruptcy court must apply the forum state's law of issue preclusion."). Under California law, issue preclusion applies only when (among other requirements) there is a "final judgment on the merits." *Samara v. Matar*, 5 Cal. 5th 322, 338 (2018). In particular, a trial court

---

[6] We also note that Ms. Schoenmann represented in the loan agreement that her title to the real estate collateral had never been "disputed or questioned." She made this statement in the face of the pending probate court trial, in which the Heirs sought to invalidate the PMA and eliminate her interest in the real property.

decision that evades appellate review has no issue preclusive effect. *Id*. at 335 ("Affording preclusive effect to a trial court determination that evades appellate review might speed up the resolution of controversies, but it would do so at the expense of fairness, accuracy, and the integrity of the judicial system. We decline to endorse that tradeoff.").

California law expressly provides that a "tentative decision does not constitute a judgment and is not binding on the court." Cal. R. of Ct. 3.1590(b). Therefore, the Tentative Decision was not final and did not have preclusive effect.

The bankruptcy court also noted that Ms. Schoenmann agreed to be bound by the Tentative Decision. This is not exactly accurate. Although the representations of counsel at the hearings were somewhat vague and even slippery, it is fairly clear that she agreed to be bound by the **result** of the Tentative Decision – the avoidance of the PMA and the changes in her property rights that flowed from that – not the superior court's factual findings that supported the result.

The bankruptcy court held that the superior court's preliminary injunction had issue preclusive effect. But under California law, with respect to a preliminary injunction, "the finality requirement of collateral estoppel is unmet. A preliminary injunction is a *provisional* remedy, and the trial court possesses the inherent power to modify its preliminary injunction which is of a continuing or executory nature." *Huntingdon Life Scis., Inc. v. Stop Huntingdon Animal Cruelty USA, Inc.,* 129 Cal. App. 4th

15

1228, 1248 (2005) (cleaned up).[7]

The court also said that it had given preclusive effect to the Tentative Decision when it granted summary judgment against Ms. Schoenmann in the quiet title adversary proceeding. For the reasons stated above, this decision was erroneous; the Tentative Decision was not a final judgment with preclusive effect.[8]

The U.S. Trustee argues that, even if the Tentative Decision and the preliminary injunction lacked preclusive effect, the court could nevertheless consider them as part of the totality of the circumstances. If the bankruptcy court had made its own findings consistent with the state court's decisions, we would probably agree. But the court did not make independent findings and instead relied only on the preclusive effect of the state court's decisions.

---

[7] The U.S. Trustee argues that the preliminary injunction ruling was "sufficiently firm" because Ms. Schoenmann had an opportunity to be heard and the superior court issued a reasoned decision. This argument ignores the California law cited above.

[8] Additionally, issue preclusion should apply only if it comports with fairness and sound public policy. *Khaligh v. Hadaegh (In re Khaligh)*, 338 B.R. 817, 824-25 (9th Cir. BAP 2006) ("The sixth element is a mandatory 'additional' inquiry into whether imposition of issue preclusion in the particular setting would be fair and consistent with sound public policy."), *aff'd*, 506 F.3d 956 (9th Cir. 2007). "The court's consideration of fairness and public policy typically focuses on: preservation of the integrity of the judicial system, promotion of judicial economy, and protection of litigants from harassment by vexatious litigation." *Italiane v. Jeffrey Catanzarite Family Ltd. P'ship (In re Italiane)*, 632 B.R. 662, 677 (9th Cir. BAP 2021) (cleaned up), *aff'd*, No. 21-60054, 2022 WL 17412881 (9th Cir. Dec. 5, 2022). Because the court's decision in the quiet title adversary proceeding about the preclusive effect of the Tentative Decision was so clearly incorrect, it would be unfair to bootstrap it into preclusive effect in the removal proceeding.

But these errors were harmless. The court correctly decided that Ms. Schoenmann's conduct concerning the EIDL amounted to cause for removal. That decision is an independently sufficient basis to affirm the bankruptcy court's order.

**D.    Ms. Schoenmann's resignation from some (but not all) of her cases did not moot the Motion to Remove.**

Ms. Schoenmann argues that her resignation rendered the Motion to Remove moot (so the bankruptcy court should not have considered it) and that we should vacate the bankruptcy court's judgment as moot because she currently is overseeing only a few remaining cases. We disagree.

"A case becomes moot — and therefore no longer a 'Case' or 'Controversy' for purposes of Article III — when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome." *Citizens for Clean Energy v. U.S. Dep't of the Interior*, No. 22-35789, 2024 WL 702312, at *1 (9th Cir. Feb. 21, 2024) (cleaned up) (holding that a challenge to a federal administrative order becomes moot when the order is revoked). As the Supreme Court recently explained, "Sometimes, events in the world overtake those in the courtroom, and a complaining party manages to secure outside of litigation all the relief he might have won in it. When that happens, a federal court must dismiss the case as moot." *Fed. Bureau of Investigation v. Fikre*, 601 U.S. 234, 240 (2024).

For two reasons, Ms. Schoenmann's resignation did not moot the Motion to Remove.

First, removal of a trustee has automatic consequences that extend beyond the specific case in which removal is sought. Section 324(b) provides that, "[w]henever the court removes a trustee or examiner under subsection (a) in a case under this title, such trustee or examiner shall thereby be removed in all other cases under this title in which such trustee or examiner is then serving unless the court orders otherwise." The trustee's resignation in fewer than all of the trustee's cases did not give the U.S. Trustee "all the relief [it] might have won" in court. *See Fikre*, 601 U.S. at 240.

Second, "a defendant cannot automatically moot a case simply by ending its unlawful conduct once sued." *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013). "To show that a case is truly moot, a defendant must prove no reasonable expectation remains that it will return to its old ways." *Fikre*, 601 U.S. at 241 (cleaned up). Given Ms. Schoenmann's unflagging assertion that everything she did was correct, there is a more than "reasonable expectation" that she could return to her old ways if she were not removed.

## CONCLUSION

The bankruptcy court did not err when it removed Ms. Schoenmann as trustee. We therefore AFFIRM.